**22**

Juanita Mae WALL et al., Appellants,

v.

Raymond C. PATTON et al., Appellees.

No. 8062.

Court of Civil Appeals of Texas,
Texarkana.

Nov. 23, 1971.

Rehearing Denied Dec. 14, 1971.

Jim Foreman, Baker, Foreman & Boudreaux, Dallas, for appellants.

Webber W. Beall, Jr., Touchstone, Bernays & Johnston, George W. Bramblett, Jr., Akin, Vial, Hamilton, Koch & Tubb, Sam Eck, Dallas Legal Service Project, Dallas, for appellees.

CHADICK, Chief Justice.

Oren Dewey Wall lost his life in an unfortunate traffic accident on South Central Expressway, a public thoroughfare in the City of Dallas, Texas. A lawsuit was filed in a District Court of Dallas County to recover damages accruing as a result of his death. Mrs. Juanita Mae Wall, the widow of Oren Dewey Wall, brought the suit in her individual capacity, and as Next Friend of Carol Lynn Wall and Susan Melinda Wall, minors (surviving children of Oren Dewey Wall), and as Administratrix of the Estate of Oren Dewey Wall, deceased. Raymond C. Patton, Vance C. Biscoe, Jr., American Courier Company, and Farmers Insurance Exchange were named as defendants in the suit. On the basis of special issues submitted to and answered by the jury, Mrs. Wall, individually, and in her representative capacities, was denied a recovery against all defendants except Vance C. Biscoe, Jr. A default judgment for the sum of $110,158.00 against Biscoe, together with interests and costs of suit, was awarded to the plaintiff in her various capacities. Individually and in her representational guise, Mrs. Wall has appealed and reference to her alone hereafter is to be understood as including all those she represents in any capacity unless the contest clearly excludes such understanding.

The trial court's action in refusing to submit a series of *imminent peril* issues is the subject of the appellant's first six points of error. The trial court gave no instruction on imminent peril, and refused to submit the issues thereon prepared and proffered for submission by counsel for the plaintiff. However, the charge did contain an explanatory instruction on sudden emergency as an excuse for conduct which otherwise might be considered negligent.

The genesis of the imminent peril doctrine in Texas is found in International and G. N. R. Co. v. Neff, 87 Tex. 303, 28 S.W. 283 (1894). See Thode, Imminent Peril and Emergency in Texas, 40 Texas Law Review 441 (April, 1962). The doctrine was subjected to explanation and refinement by the Supreme Court of Texas in Texas & Pacific Ry. Co. v. Watkins, 88 Tex. 20, 29 S.W. 232 (1895); Jackson v. Galveston, Houston & San Antonio Railway Co., 90 Tex. 372, 38 S.W. 745 (1897); Missouri, Kansas & Texas Ry. Co. of Texas v. Rogers, 91 Tex. 52, 40 S.W. 956 (1897), and evolved to its present concept in Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545 (1937), Comm.App. opin. adopted by Sup. Ct. In the last mentioned case, the elements of the doctrine are expressed in this excerpt, to-wit:

" * * * (1) the peril or alarm must be caused by the negligence of the defendant; (2) the apprehension of peril, from the standpoint of the injured person, must have been reasonable; (3) the appearance of danger must have been so imminent as to leave no time for deliberation; and (4) in cases where the evidence raises an

24

issue of negligence on the part of plaintiff, the negligence of plaintiff must not have concurred in bringing about a situation of peril, or contributed in creating the startled, dazed, or confused condition of the plaintiff's mind."

When the elements of the imminent peril doctrine are established by a plaintiff, the ordinary care standard, that is, the duty of the plaintiff to exercise ordinary care for his own safety and welfare, does not enter into the liability equation. In Prof. Thode's words, "This doctrine, like the *last clear chance* and *discovered peril* doctrines, struck at the citadel of contributory negligence. The *Neff* or *terror* or *imminent peril* doctrine did it, not by excusing the contributory negligence as the latter doctrines had done, but by denying that there was in fact any contributory negligence on the part of the plaintiff, 'whether that person be prudent or imprudent' * * *." The acts of a plaintiff in an imminent peril situation, it is said in Jackson v. Galveston, H. & S. A. Ry. Co., supra, "are, in law, regarded as would be the movements of an inanimate object set in motion by such [defendant's] negligence." It is insisted by the appellants that Yarborough v. Berner, 467 S.W.2d 188 (Tex.Sup.1971) equates imminent peril with the *sudden emergency* doctrine and in practical effect merges and unifies these concepts into one and the same doctrine, but this court does not agree that the case has that effect.

Under the heading, "INSUFFICIENT EVIDENCE TO RAISE AN IMMINENT PERIL ISSUE," it is argued that the state of the evidence in the record required the trial judge to refuse submission of imminent peril issues. The evidence will be examined. At about 9:15 p. m., April 26, 1968, shortly prior to the occurrence in which Dewey Oren Wall was fatally injured, he was driving an automobile in a southerly direction in the left traffic lane of the three south-bound lanes of six-laned South Central Expressway. A vehicle spun around in front of him and he came to a halt. But as he began applying his brakes the rear of his automobile was struck by an automobile Raymond C. Patton was driving. This initial collision occurred near the bottom of a hill approximately 700 feet to the south of the hill's crest. Both parties in the collision got out to examine the damage and entered into a conversation. A witness, Thomas Monroe, approached and the three were standing in the roadway near the street's median strip while the discussion proceeded. The median was a concrete strip four and one-half feet wide, divided by a metal barrier along the center line. Mr. Wall opened the door to his car as he returned to it, and at this time Mr. Patton heard a noise and saw a vehicle bearing down upon them, the front end headed towards the divider median and the back end sliding sideways as it came down the hill. The approaching automobile had Vance C. Biscoe, Jr., in the driver's seat. Mr. Patton screamed, "He's going to hit us," and jumped the metal barrier to the east side of the median. Monroe likewise jumped the barrier, and at approximately the same time, though no witness actually saw him, Wall in some manner cleared the dividing barrier and is next seen in the adjacent north-bound traffic lane where he was struck by an automobile owned by American Courier Company and driven by Samuel V. Reese, its employee. The left-front of the Reese driven vehicle struck Wall, and his body passed over the fender and windshield and was hurled approximately 40 feet from the point of impact. At the point of interest here, the street was open, lighted, and visibility was such that a motorist proceeding along it southward could see from the top of the rise seven hundred feet away down to the point where the Patton-Wall collision took place. Biscoe was driving at a speed of approximately 50 miles per hour before seeing the Patton and Wall vehicles standing in the traffic lane ahead. He claimed not to have seen these vehicles until he was within fifty or sixty feet of them.

It is vigorously argued that there is no evidence that Wall personally saw Biscoe's car, or that he was terrified thereby. It is suggested and urged that the facts bring the

case within the purview of Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386 (1951). Clarity will be enhanced by pausing to examine that case. Goolsbee was a railroad locomotive fireman. He was working on an engine as it approached a point where railroad tracks crossed. Goolsbee's engine had the right-of-way, but another train was also approaching the crossing on the intersecting track. The engineer in charge of the engine Goolsbee was firing, seeing that a collision was imminent, threw on the emergency brake and attempted to jump from the engine cab. Goolsbee did not personally see the approaching train on the intersecting track, but he saw the actions of his engineer. Responding to the engineer's activity, Goolsbee jumped from the cab and broke his leg. In the Supreme Court opinion it is said: "His apprehension of peril which caused him to leap was brought about by his observation of the behavior of the engineer with whom he worked, rather than by his observation of the negligent acts of respondent's employees." The court was satisfied and held that Goolsbee reacted to the engineer's behavior, and not because of any apprehension or terror induced by the approach of the other train.

■ There is a clear distinction between the facts of this case and *Goolsbee*. Although Wall died and his testimony as to what he saw, heard and did is not available, circumstances speak for him. Mr. Wall was in an open, clear, lighted, street where he could see a south-bound car approaching for a distance of 700 feet. The approaching Biscoe car was skidding sideways out of control the last 50 feet before it struck the Patton vehicle, and was creating a noise audible to those present. Although Patton screamed a warning, there is nothing to show that the approaching uncontrolled vehicle was not as apparent to Wall as it was to Patton. The three standees simultaneously cleared the barrier, from west to east. Patton and Monroe lived to describe their action at this moment, but they did not observe Wall. At substantially the same instant Patton and Monroe were jumping the barrier rail in the center of the median, the evidence shows that Wall also crossed it and is next seen in a north-bound traffic lane. Whether or not terror induced by Biscoe's conduct actuated Wall is a question for the jury. So far as these facts are concerned, they bring the case within the field of imminent peril, as staked out in Beck v. Browning, supra. In the action against Biscoe, imminent peril should have been charged. But this evidence is not decisive as to all appellees, as the bearing of other factors must now be considered.

Appellant presents a theory that had the imminent peril doctrine been properly charged, the jury would have been authorized to find that Biscoe's negligent conduct concurred and cooperated with the negligence of Patton and Reese to cause Wall's death; and that had the jury further found that Wall was terrified, etc., by Biscoe's conduct, Wall would have been insulated by the imminent peril doctrine from the effect of the contributory negligence the jury found against him. This theory treats Biscoe, Patton, and Reese as joint tort feasors, and assumes that their concurring negligence imposed joint liability upon them because their negligent acts united in causing a single indivisible injury, the death of Wall, though one or more of these parties did nothing to create an imminent peril situation. The proposition that concurring negligence imposes joint liability is supported by Strakos v. Gehring, 360 S.W.2d 787 (Tex.Sup.1962); Landers v. East Texas Salt Water Disposal Co., 151 Tex. 251, 248 S.W.2d 731 (1952); Dement v. Olin-Mathieson Chemical Corporation, 5 Cir., 282 F.2d 76 (1960); 55 Tex.Jur.2d Torts, Sec. 14 (1964). But the theory of joint liability under the circumstances of this case presents a novel question that demands further examination.

■ From the previous description of the accident, it is obvious that the only action, negligent or otherwise, that could have terrorized Wall just prior to his death was the uncontrolled, skidding approach of the

Biscoe-driven vehicle. The collision of the Patton and Wall vehicles had occurred some moments before Biscoe appeared on the scene, and these vehicles had come to rest and remained stationary for a sufficient period of time for the drivers, and apparently a witness, to discuss the occurrence. The effect of acts or omissions that caused this collision had run its course and was exhausted. All forces involved in or generated by this first collision had come to rest, and no one was in any real or apparent danger therefrom. No further injury would have been inflicted upon anyone by reason of the conduct of these parties, though such conduct might well have been found to have created the condition that made possible the second collision in which Biscoe's vehicle participated. Biscoe's negligent conduct could not have concurred with Patton's because under the evidence adduced, Patton's negligent conduct that resulted in harm to Wall was an independent intervening agency from Patton's standpoint. It therefore appears that the evidence in the record did not raise the issue of imminent peril as to Patton.

■ The position of Reese's employer, American Courier Company, differs from that of both Patton and Biscoe. There is no evidence that Reese's negligent conduct prompted Wall into fleeing from the peril posed by Biscoe's out-of-control vehicle; the appellants' contention is that Reese's negligent conduct concurred and cooperated with Biscoe's negligence in producing Wall's injury. In the list of the several elements of imminent peril in the quotation above from Beck v. Browning, it is specified that the peril or alarm to the plaintiff must have been caused by the negligence of the defendant. Consistent with the present development of the imminent peril doctrine it must be held the imminent peril issue did not arise in the Wall action against American Courier Company, because Reese's negligent action did not cause Wall's alleged terrorized condition. It follows that there was no error, so far as American Courier Company is concerned, in the trial court's failure to submit the imminent peril issue.

■ Another phase of the problem just discussed is the duty of Wall and Reese toward each other at and just prior to the fatal collision. To be consistent with the views just expressed, it must be held that each was governed by the ordinary care standard, that is, each was under a duty to exercise the care that an ordinarily prudent person would use under the same or similar circumstances. The trial court properly submitted issues thereon under the pleadings and proof, and the jury found Wall negligent in entering a north-bound lane of the freeway, and in failing to keep a proper lookout for traffic in the north-bound lanes, finding in each instance that the negligent act was a proximate cause contributing to Wall's fatal injury. Wall's contributory negligence is a bar to recovery from Reese's employer, American Courier Company, as the record contains no finding that excused or rendered contributory negligence unavailable as a defense. The trial court properly rendered judgment denying a recovery against American Courier Company.

It was stipulated that Patton and Biscoe were uninsured motorists, and appellant briefed points of error that dealt with procedural matters arising in the trial of the uninsured motorist phase of the case. The questions raised are without merit, and for the most part have been set at rest by State Farm Mutual Automobile Insurance Company v. Cowley, 468 S.W.2d 353 (Tex.Sup. 1971); and Allstate Insurance Company v. Hunt, 469 S.W.2d 151 (Tex.Sup.1971).

The original brief of the appellant, Mrs. Wall, prayed for reversal of the judgment of the trial court generally, but in her motion for rehearing she expressly prayed for affirmance of the judgment wherein she was awarded a recovery from Biscoe. In view of her satisfaction with the judgment against Biscoe and the previously expressed conclusions pertaining to Patton and American Courier Company, the problem at this juncture is the proper disposition of the

appeal as it affects that component of the trial court judgment denying Mrs. Wall a recovery from Farmer's Insurance Exchange.

Prior to rendition of judgment in the trial court, counsel for Mrs. Wall filed a written motion for judgment notwithstanding the jury verdict. The motion also recited that a timely motion had previously been filed to hold Vance C. Biscoe in default and prayed that judgment be entered against Biscoe "for the reason that as a matter of law Vance C. Biscoe did not appear, did not file an answer, and was in default at the time that this case was brought to trial." And in this particular the Wall motion for judgment was granted and default judgment entered in the amount previously noted. Also bearing upon disposition of the appeal as it affects Farmer's Insurance Exchange is the fact that the parties stipulated that Biscoe was an uninsured motorist within the terms and coverage of an automobile insurance policy issued by Farmer's Insurance Exchange to Oren Dewey Wall. This insurance contract obligated the company to pay all sums which Oren Dewey Wall or his legal representative should be legally entitled to recover as damages from the operator of an uninsured automobile, etc., subject to a policy limit of $10,000.00.

In the trial petition, Mrs. Wall sued the insurance company on the contractual obligation of the insurance policy. The company answered and alleged as a defense certain conduct of Oren Dewey Wall as negligence proximately causing the injury he suffered. Through counsel the company participated in the trial and was successful in securing a jury verdict on issues finding Oren Dewey Wall guilty of negligence proximately causing his injury. The judgment recites that the insurance company urged in its motion for judgment that Mrs. Wall take nothing from any of the defendants named in the trial petition. Except as to the defendant, Vance C. Biscoe, the court granted the insurance company's motion for judgment.

■ The failure of the trial court to enforce the contractual obligation of the company to Mrs. Wall has escaped consideration in the briefs of the parties. Mrs. Wall's motion for new trial does not assign the trial court's action as error. Consistent with the failure to so assign error, Mrs. Wall's brief in this appeal does not contain a point of error presenting this action of the trial court for review. A motion for new trial is required by Tex.R.Civ. P. 320 to specify each ground on which it is founded; and no ground not specified may be considered. And as stated in Tex. R.Civ.P. 374, "A ground of error not distinctly set forth in the motion for new trial, * * * shall be considered as waived." Fundamental error aside as the record does not raise it, this court is powerless to reverse the trial court's judgment in the absence of properly assigned error. Texas Power & Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524 (1958). Neither may this court revise the action of the trial court when the alleged error is not embraced in a point of error in appellants' brief. Root v. Texas Bitulithic Company, 316 S.W.2d 293 (Tex.Civ.App. Eastland 1958, writ ref'd).

On further consideration of the motions for rehearing, it is concluded that reversible error is not shown, and that the judgment of the trial court should be affirmed. It is so ordered. The opinion delivered October 26, 1971, is withdrawn and this is substituted for it.