**SOUTHERN NATIONAL BANK OF HOUSTON, Trustee and Highland Resources, Inc., et al., Appellants,**

v.

**The CITY OF AUSTIN, Texas, et al., Appellees.**

**No. 1245.**

Court of Civil Appeals of Texas, Tyler.

May 17, 1979.

Rehearing Denied June 14, 1979.

C. C. Small, Jr., Small, Craig & Werkenthin, James M. Alsup, Robert B. Burns, Jr., John J. McKay, Austin, for appellants.

John Meinrath, Asst. City Atty., Austin, for appellees.

McKAY, Justice.

This is a suit contesting the validity of a Historical Preservation Ordinance of the City of Austin.

Southern National Bank of Houston, Trustee (Trustee), and Highland Resources, Inc. (Highland), brought this suit against the City of Austin (City), seeking an injunction and declaratory judgment against the City, its City Council members, the Historic Landmark Commission and its members, the Planning Commission and its members, and all City officers, agents and representatives to prevent them from enforcing against their property certain ordinances of the City pertaining to Historic Landmark Preservation. The Heritage Society of Austin, Inc., the State of Texas, and certain shareholders of the Driskill Hotel Corporation intervened. Driskill Operating Company became an involuntary plaintiff by court order, and Louis Page, owner of property adjacent to the Driskill Hotel, filed an intervention.

Highland and its Trustee alleged that the Trustee had legal title in trust and Highland was beneficiary of the trust containing the property known as the Driskill Hotel located in downtown Austin, Texas; that the premises consisted of two component and integrated parts, described generally as the old portion (being generally the south portion of the hotel), and the tower (newer) portion, located on the north area of the property; that in 1971 Highland deeded the north or tower portion (with a part of the old section) to the predecessors in title of the present hotel owner-operator, Braniff Airlines, Inc. (which owns and acts through the Driskill Operating Company), retaining ownership of the balance of the property, and leasing same to the lessee-predecessors of Braniff, under which lease Braniff is tenant and current hotel operator; that the Driskill Hotel for approximately 40 years has been operated as a complete, unified, integrated business, using the entire physical properties of both the tower and the old section, which are joined and unified, both exteriorly and interiorly, in every respect, into a single structure—the tower section having been added as an integrated part of the hotel and being so used and operated.

The pleadings of Highland and its Trustee further alleged that on March 7, 1974, the City enacted Ordinance No. 740307–A, amending Chapter 45 of the Code of the City of 1967, as amended, and by said amendments enacted provisions identified as Sections 45–42 through 45–55 of the City Code of 1967, and has thereby added a new Article IV, "Historic Landmark Preservation," and created a commission known as Historic Landmark Commission, assigning to it various powers and authority; that purporting to act under color of authority of said 1974 ordinance the City, acting through its City Council, Planning Commission and Landmark Commission, caused certain proceedings to be brought to have the property of Highland zoned "Commercial-Historic District" (C–2–H zoning), by Ordi-

nance No. 760415–E; and that such zoning ordinance described and covered generally the older or southern portion of the premises known as the Driskill Hotel.

The petition then alleged that the City by acting on inadequate notice to Highland denied Highland and its Trustee a reasonable opportunity to protect their rights and property, as well as those owning the leasehold interests; that such ordinance infringed upon and impaired the contractual rights and obligations of the parties and their tenant, and created unreasonable hardships in the maintenance, operation and management of the hotel properties and business in violation of the pre-existing lease and contracts of the parties, and effectively appropriated the rights of the owner and tenant to control, manage and operate their property, and transferred such rights to the City's boards and agencies; that the City violated their constitutional rights, as well as their rights under Articles 1011a–1011e, Tex.Rev.Civ.Stat.Ann., and acted arbitrarily, capriciously and unlawfully in zoning their property, and that such action was without factual or legal support.

The pleadings of Highland and its Trustee prayed (1) that the City, the City Council members, the Planning Commission and its members, and all the City's officers, agents and representatives be enjoined from enforcing, or threatening to enforce, directly or indirectly, as against them, their lessee and their property the provisions of Article IV pertaining to Historic Landmark Preservation, being Sections 45–42 through 45–55 of the City Code of 1967, as amended, and any amendments thereto; (2) for a declaratory judgment, finding and declaring that the ordinances are unlawful and void as applied to their property, and are violative of their contract rights and impair said contractual obligations with their lessee-tenant; that the court make further declarations of the rights and status of their property as they may be entitled thereto, including a declaration, where applicable, that various provisions of the ordinances have no applicability to their property.

The trial court held that Ordinance No. 760415–E which applied to and zoned the older section of the Driskill Hotel as a Historic Landmark was unlawful, in violation of the Constitutions of the United States and the State of Texas, and was therefore null and void. That portion of the trial court's judgment is not appealed from. All other declaratory relief was denied; the prayer of Highland, its Trustee, and the intervenors for a permanent injunction enjoining the City from enforcing Article IV of Chapter 45 of the Code of the City was denied. Driskill Operating Co. was dismissed from the case by the judgment.

Highland, its Trustee, and the Driskill Hotel Corporation, all appellants in this Court, appeal from those portions of the judgment which deny all declaratory and injunctive relief other than that granted against Ordinance No. 760415–E. Appellee, the City of Austin, gave notice of appeal from that portion of the judgment dismissing the involuntary plaintiff, the Driskill Operating Co.

Since Ordinance No. 760415–E has been held to be invalid by the trial court, and no appeal is before us on that issue, we deem it unnecessary to detail the findings of fact filed by the trial court setting out the procedures and actions taken by the Historic Landmark Commission, the Planning Commission or the City Council in zoning the older section of the Driskill Hotel as a Historic Landmark (H). In this appeal the attack is made upon Article IV in its entirety as being invalid under the statutes and Constitution of Texas and the Constitution of the United States.

Sec. 45–42 of Article IV, entitled "Historic Landmark" Defined, provides that

". . . the term 'historic landmark' shall mean any building, structure, site[,] district, area, or land of architectural, historical, archaeological or cultural importance or value, which the city council determines shall be protected, enhanced, and preserved in the interest of the culture, prosperity, education and general welfare of the people."

Sec. 45–43 of Article IV, entitled Declaration of Policy, provides, in part:

"The city council hereby finds and declares as a matter of public policy that the protection, enhancement, preservation and use of historic landmarks is a public necessity and is required in the interest of the culture, prosperity, education and general welfare of the people. . . ."

Sec. 45–44 of Article IV, Historic Landmarks-Designation, provides in part:

"The city council may designate buildings, structures, sites, districts, areas and lands in the city as historic landmarks and define, amend and delineate the boundaries thereof . . . ."

Sec. 45–45 provides the criteria to be used in designations, Sec. 45–46 provides for the creation of a Historic Landmark Commission, and Sec. 45–47 provides for the function of such commission, a part of which function is to "recommend to the city planning commission, ordinances designating certain buildings, structures, sites, districts, areas and lands in the city as historic landmarks."

Sec. 45–48 provides for action by the City Planning Commission in holding public hearings to consider any historic landmark designation ordinance after receiving a recommendation from the Landmark Commission, while Sec. 45–49 provides for recording of a historic landmark designation ordinance.

Sec. 45–50 of Article IV, entitled "Exterior alterations and changes, certificate of appropriateness; ordinary repair or maintenance; appeal," provides in part:

"No person or entity shall construct, reconstruct, alter, change, restore, remove or demolish any exterior architectural feature of a designated historic landmark unless application be made to the landmark commission for a certificate of appropriateness and such a certificate be granted . . . ."

and further provides the procedure when a building permit is or is not required and provides for appeal to the city council by any aggrieved person.

Sec. 45–51 concerns the actions to be taken by the Landmark Commission on applications for demolition or removal of designated historic landmarks.

Sec. 45–51.1 provides:

"Sec. 45–51.1. Procedure for obtaining building permit, removal permit, demolition permit and for altering the exterior of a building or structure during pendency of consideration of such building or structure as a historic landmark or as a part of a historic landmark.

"(a) From and after the date on which the chairman, any vice-chairman or the executive secretary of the landmark commission by written order directs that any building, structure or site within the city be placed upon the agenda for any special or regular meeting of the landmark commission or any committee thereof for the purpose of considering or discussing whether or not same should be designated as a historic landmark, or from and after the date of the placement of same upon any such agenda for such purpose as evidenced by the date of such agenda or, if not dated, the date on which such agenda is posted in accordance with the provisions of Article 6252–17, V.A.T.C.S., as amended, or from and after the date that the landmark commission or any committee thereof approves or recommends a preservation plan or any amendment of any existing preservation plan which embraces or includes same building, structure, or site within the city, whichever date first occurs, no building permit allowing the construction, reconstruction, alteration, change, restoration, removal or demolition of any exterior architectural feature of any building or structure then existing included or embraced in whole or in part within the scope of such written order or such agenda or such preservation plan or such amendment thereof, as the case may be, no permit allowing the removal of all or any part of any such building or structure and no permit allowing the demolition of any part or all of any such building or structure may be issued by any official of the city, nor if no such permit is required,

may any person or entity remove or demolish any part or all of any such building or structure, nor if no such permit is required, may any person or entity construct, reconstruct, alter, change, restore, remove or demolish any exterior architectural feature of any such building or structure, until the earliest of the following conditions have [sic] been met:

"(1) A final and binding certificate. of appropriateness, removal or demolition, as may be appropriate, has been issued by the landmark commission;

"(2) The landmark commission fails to recommend that some part or all of any such building or structure be designated a historic landmark or be included within a historic landmark or within a preservation plan or an amendment thereof within sixty days following the earliest of the above described dates activating this section applicable under the circumstances; or,

"(3) A final and binding decision has been made by the city council that no part of any such building or structure shall be designated a historic landmark or shall be included within any designated historic landmark. . . ."

Sec. 45–52 provides that "The exterior of a designated historic landmark shall be maintained to insure the structural soundness of such landmark," and further provides notice shall be given in writing of such fact, whereupon the owner "shall within ninety days of receipt of such notice, satisfy the building standards commission that reasonably necessary repairs to safeguard the structural soundness of the landmark have been effected."

Sec. 45–53 provides that the historic landmark designation shall coexist with other use classifications and shall continue to be governed by the comprehensive zoning ordinance of the city.

The penalty provision is Sec. 45–54, which reads as follows:

"Sec. 45–54.  Penalty.

"(a) It shall be unlawful to construct, reconstruct, structurally alter, remodel, renovate, restore, demolish, raze, or maintain any building, structure, or land in a historic landmark designation in violation of the provisions of this chapter, and the city in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful construction, restoration, demolition, razing, or maintenance, to restrain, correct, or abate such violation, to prevent any illegal act, business, or maintenance in and about such premises.

"(b) Any person, firm or corporation violating any provisions of this chapter shall be guilty of a misdemeanor, and shall be deemed guilty of a separate offense for each day or portion thereof during which any violation hereof is committed, continues or is permitted, and upon conviction of any such violation shall be punishable by a fine not to exceed two hundred dollars.  (Ord.No. 740307–A, pt. 1.)"

Sec. 45–55 provides that notice, when required to be given, "if not actually delivered, shall be given by depositing the same in the United States mail, postage prepaid, addressed to the person or entity to whom such notice is to be given at his last-known mailing address.  When notice is required to be given to an owner or owners of property, such notice, delivered or mailed by certified or registered mail, may be addressed to such owner or owners who have rendered their said property for city taxes as the ownership appears on the last approved city tax roll."

No provision for compensating property owners in the event their property was zoned "H" was made by Article IV, as it appears in the record of this case, and Highland received no compensation nor any financial aid from any revolving fund or otherwise.  Minutes of the city council reveal that discussion was had, prior to enacting Article IV, as to a provision for compensating property owners whose property was zoned "H," but there is no indication in the record that such action was ever taken.

The trial court found that compliance with Article IV may unduly increase costs of exterior hotel repairs for the zoned prop-

erty, as had already occurred in connection with balcony repairs.

In their points of error Highland and its Trustee contend that the trial court erred in failing to render declaratory judgment that Article IV of the City Code is unlawful

1. because it exceeds the powers of the City under Articles 1011a–1011e, and Article 1175, Tex.Rev.Civ.Stat.Ann., and Article XI, Sec. 5, Constitution of Texas, as applied to their property and rights therein;

2. because it was an attempt to legislate by such vague, indefinite and unreasonable standards as to be arbitrary, confiscatory and a denial of due process, all under Articles I, Sec. 19 and II, Sec. 1, Texas Constitution, and the 14th Amendment, U.S. Constitution, as applied to their property and rights;

3. because it is damaging, taking, confiscation or unreasonable restraint of the property of Highland and its Trustee in violation of Article I, Secs. 17 and 19, Texas Constitution, and the 14th Amendment, U.S. Constitution, without due process and course of law and without adequate and fair compensation being made as applied to their property and rights;

4. because such article is a denial of the equal protection of the laws clause of the 14th Amendment, U.S. Constitution, as applied to their property and rights;

5. because such article is an impairment of obligation of contracts and rights in violation of Art. I, Sec. 16, Texas Constitution, and Article I, Sec. 10, Clause 1, U.S. Constitution, as applied to their property and rights;

6. The trial court erred in failing to permanently enjoin the city from enforcing or attempting to enforce Article IV, City Code, through its officers, commissions or other ordinances, as against the hotel property.

At the outset we are met with a motion by appellees to dismiss the appeal on the grounds (1) that the court should not rule on constitutional questions unless and until it becomes absolutely necessary; (2) that Highland and its Trustee are not prejudiced or aggrieved by the judgment; (3) that there is no evidence in the record that the City will attempt to rezone Highland's property; and (4) that courts have no power to pass on hypothetical questions.

■ The burden is upon the party who attacks a law as unconstitutional, and the courts will not hold legislative enactments unconstitutional and invalid unless it is absolutely necessary to do so. *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939); *Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.*, 454 S.W.2d 729, 732 (Tex.1970). The courts will not anticipate constitutional questions but will decide such questions only where a present necessity exists, and then no more broadly than necessary. *Bush v. State of Texas*, 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); *Schauer v. Producers Wool & Mohair Co.*, 86 F.2d 576 (5th Cir. 1936).

■ It is well established that one may not complain of errors in a judgment that do not injuriously affect him or which merely affect the rights of others, and the right of appeal rests only in an aggrieved party to a lawsuit. *Shell Petroleum Corp. v. Grays*, 131 Tex. 515, 114 S.W.2d 869, 870 (Tex.Comm.App.1938, opinion adopted); *McFarling v. Lapham*, 489 S.W.2d 435, 440 (Tex.Civ.App.—Beaumont 1972, writ ref'd n. r. e.); *Van's Ballroom, Inc. v. State*, 385 S.W.2d 623, 624 (Tex.Civ.App.—Austin 1964, no writ); *Texas Employers Ins. Ass'n. v. Howell*, 107 S.W.2d 391, 392 (Tex.Civ. App.—Dallas 1937, writ dism'd); 3 Tex. Jur.2d Rev., Appeal and Error—Civil Cases sec. 180, p. 582.

■ The question then arises: Who is an aggrieved party? An aggrieved person has been defined as "any person having any interest recognized by law in the subject-matter of the judgment which he considers injuriously affected by the action of the court." *Peavy v. Goss*, 90 Tex. 89, 37 S.W. 317, 319 (1896); *Jones v. Eastham*, 36 S.W.2d 538, 542 (Tex.Civ.App.—Galveston 1931, writ ref'd).

"A party is aggrieved by a judgment or order in his favor to the extent that it fails to award him all the relief that he has demanded or to which he is entitled; to such extent he is prejudiced or aggrieved, hence entitled to appeal." 3 Tex.Jur.2d Rev., Appeal & Error—Civil Cases sec. 181, at p. 584.

See also 2A Words and Phrases p. 638, et seq. We are of the opinion that Highland and its Trustee are aggrieved parties.

We must also decide whether there is a justiciable controversy between the parties. Art. 2524–1, Uniform Declaratory Judgments Act, Tex.Rev.Civ.Stat.Ann., provides (sec. 1) that "Courts of record . . . shall have power to declare rights, status, and other legal relations *whether or not further relief is or could be claimed. . .* [Sec. 2] Any person . . . whose rights, status, or other legal relations *are affected by a . . ., municipal ordinance . .* may have determined any question of construction or validity *arising under the . . ordinance . . .* and obtain a declaration of rights, status, or other legal relations thereunder." [Emphasis added.]

"The Uniform Declaratory Judgments Act . . . furnishes a remedy or procedure of great elasticity to facilitate or aid the courts in the construction or interpretation of the statutes on the application of adverse parties with requisite interest, and as they apply to situations presented."

*Railroad Commission v. Houston Natural Gas Corp.*, 186 S.W.2d 117, 122 (Tex.Civ. App.—Austin 1945, writ ref'd w. o. m.). 22 Am.Jur.2d Declaratory Judgments, Sec. 11, p. 850, states:

"Thus, it has been stated that jurisdiction exists to declare the rights, status, and other legal relations of the parties if the complainant is possessed of a judicially protectible right or status which is placed in jeopardy by the ripe or ripening seeds of an actual controversy with an adversary party, and such jurisdiction exists although the status quo between the parties has not yet been destroyed or impaired and even though no relief is or can be claimed or afforded beyond that of merely declaring the complainant's rights so as to relieve him from a present uncertainty and insecurity."

■ These rules are well established. In applying them to the instant case, we note that once appellants' property was placed on the agenda of the Landmark Commission by the chairman, any vice-chairman, or the executive secretary of the Commission, pursuant to Section 45–51.1 of Article IV, quoted above, the restrictions of that section attached to the property. It is appellants' primary contention that it remains subject to the rigors of that section. With this contention, we agree.

Although the City argues that Section 45–51.1 no longer applies to appellants' property after the City Council acted to designate appellants' property as a historic landmark, this contention is not borne out by the language of the ordinance itself. A reading of that section discloses that the restrictions provided for therein continue in force until one of three events occurs. It is indisputable that the record before us contains no indication that any one of the three events which would terminate the restrictions of Section 45–51.1 has occurred. By the very terms of the statute, therefore, the placing of appellants' property on the agenda of the Landmark Commission in December, 1974, had the effect of applying the restrictions provided for therein to that property, and, no event terminating those restrictions having occurred, they still apply to appellants' property.

■ Inasmuch as it is clear that Section 45–51.1 applies to appellants and their property, the trial court correctly assumed jurisdiction of the entire controversy as to Article IV. In its judgment, the trial court stated, "The Court finds that the controversies between the parties, as reflected in their various pleadings and on the evidence adduced, are real, bona fide, and existing, and that the controversies are justiciable and genuine in all respects." Appellees have brought to this court no cross-point specifically challenging that finding.

In our view the pleadings of Highland and its Trustee were sufficient to establish jurisdiction under the Declaratory Judgments Act. Accordingly, appellees' Motion to Dismiss is overruled.

▇ Once jurisdiction of the subject matter has been established under the Declaratory Judgments Act, however, it is discretionary with the trial court whether the declaratory relief prayed for is granted. Section 6 of that Act provides, "The Court *may* refuse to render or enter a declaratory judgment or decree . . . [which] would not terminate the uncertainty or controversy giving rise to the proceeding." [Emphasis added.] See *Town of Santa Rosa v. Johnson*, 184 S.W.2d 340, 341 (Tex. Civ.App.—San Antonio 1944, no writ); *Puretex Lemon Juice, Inc. v. California Products, Inc.*, 324 S.W.2d 449, 453 (Tex.Civ.App.—San Antonio 1959), affirmed, 160 Tex. 586, 334 S.W.2d 780 (1960); *Anderson v. McRae*, 495 S.W.2d 351, 356 (Tex.Civ.App.—Texarkana 1973, no writ). "The Texas cases dealing with the propriety of the trial court granting a declaratory judgment are well settled that the court *may* do so where the judgment would serve a useful, beneficial purpose." *Standard Fire Insurance Co. v. Fraiman*, 514 S.W.2d 343, 346 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ), and cases there cited. Here, the trial court, in its discretion, denied all declaratory relief against the whole of Article IV. Although appellants present no argument that the trial court below abused its discretion in so doing, we feel that is the next question which we must decide.

▇ Now that the specific ordinance applying Article IV to appellants' property has been invalidated by the court below, it is clear that Section 45–51.1 is the only portion of Article IV which has any present adverse effect on appellants or their property. Appellants, in their points of error, are careful to limit their complaints against Article IV with the words "as applied to the property and rights therein of Highland and its Trustee." Appellants themselves contend that there is an effect of Article IV on their property only by virtue of Section 45–51.1 and the "basic policy" of Article IV, which is found in Section 45–43. With the exception, therefore, of the presently effective provisions of Section 45–51.1, the only potential effect of Art. IV on appellants' or their property is the possibility or appellants' apprehension that their property will be zoned "historical" again at a future date. We do not feel that this apprehension of a contingency makes a proper subject for declaratory relief. We do hold that with respect to Section 45–51.1, the trial court did abuse its discretion. With regard to the remainder of Article IV, we hold that there was no abuse of discretion in the trial court's refusal to grant the requested declaratory relief. *Town of Santa Rosa v. Johnson*, supra; *Puretex Lemon Juice, Inc. v. California Products, Inc.*, supra; *Anderson v. McRae*, supra. The fact that other issues in the general controversy between the parties remain unresolved by a declaratory judgment does not deprive the court of the power and discretion to render such a judgment. *Standard Fire Insurance Co. v. Fraiman*, supra. By the same token, the court has discretion to render a judgment declaring the rights of the parties only as to some of the issues raised. Also, where the trial court erroneously fails to declare the rights of the parties, it is our duty to do so. *Tall Timbers Corp. v. Anderson*, 370 S.W.2d 214, 217 (Tex.Civ.App.—Fort Worth 1963), reversed on other grounds, 378 S.W.2d 16 (Tex.1964).

Now that we have determined that the trial court erred in failing to declare the rights of the parties with respect to the effect of Section 45–51.1 on appellants' property, we must determine and declare the validity of that section and the rights of the parties thereunder.

▇ In *City of Austin v. Teague*, 570 S.W.2d 389 (Tex.1978), our Supreme Court spoke of a "servitude" which the City in that case had imposed upon the property of the landowner by rejecting three times his application for a waterway development permit, the City thereby seeking to preserve a scenic easement on the southern approach to the city. So here, the restrictions im-

posed upon appellants' property by the placing of it on the agenda of the Landmark Commission pursuant to Section 45–51.1, amount to a *servitude* on appellants' property with no provision for any compensation to be paid therefor. See also *San Antonio Conservation Society, Inc. v. City of San Antonio*, 455 S.W.2d 743 (Tex.1970). We hold, therefore, that there has been a "damaging" of appellants' property for public use without adequate compensation, which is proscribed by Article 1, Section 17, of our State Constitution.

Section 45–51.1 provides generally that after the date that one of three persons, the chairman, any vice-chairman, or executive secretary of the Landmark Commission, directs by written order that any building be placed on the agenda of the Commission for consideration of its being designated as a historic landmark, the restrictions of that section apply to that property. The restrictions include the refusal to issue any building permit which would allow any change to any exterior architectural feature of the building, the removal of all or any part of the building, or the demolition of all or any part of the building. Furthermore, even where no building permit is required, no removal or demolition of all or any part of the building, or any change to any exterior architectural feature of the building may be done. These restrictions apply until the earliest of the following conditions has been met: (1) the issuance by the Landmark Commission of a certificate of appropriateness, removal, or demolition; (2) the failure by the Commission to recommend that all or part of the building be designated a historic landmark within sixty days; or (3) the decision by the City Council that no part of the building shall be designated a historic landmark.

■■■ The enactment or amendment of a zoning ordinance is a legislative act that can be performed only by the local legislative body having final authority in the matter, and that authority cannot be delegated to an administrative or advisory officer or board. 63 Tex.Jur.2d Zoning Section 21 at p. 765, and cases cited therein.

Article 1011a, Tex.Rev.Civ.Stat.Ann., empowers the *legislative body* of cities "in the case of designated places and areas of historic and cultural importance, to regulate and restrict the construction, alteration, reconstruction, or razing of buildings and other structures." This is not a delegable power. Although it is true that the legislative body of a city may delegate to designated public officials or boards the power to pass upon applications for building permits as a prerequisite to the erection, alteration or use of buildings, the section at issue here goes far beyond that in precluding actions with regard to buildings and other structures regardless of the need for a building permit therefor. The action by the designated public official in placing the property on the Commission's agenda is tantamount to a temporary designation of the property as "historic". The individual public official, therefore, has usurped the legislative authority of the City Council by placing the property on the agenda and thus causing the restrictions of Section 45–51.1 to attach to the property and its owners. *Harrington v. Board of Adjustment of the City of Alamo Heights*, 124 S.W.2d 401, 406 (Tex.Civ.App.—Amarillo 1939, writ ref'd); *Driskell v. Board of Adjustment*, 195 S.W.2d 594, 599 (Tex.Civ. App.—Fort Worth 1946, writ ref'd n. r. e.); *Board of Adjustment v. Stovall*, 218 S.W.2d 286, 288 (Tex.Civ.App.—Fort Worth 1949, no writ); *Texas Consolidated Theaters, Inc. v. Pittillo*, 204 S.W.2d 396, 398 (Tex.Civ. App.—Waco 1947, no writ). This is especially true in light of the fact that Article IV, as found in the record before us, does not purport to create historical districts or zones in the City of Austin, but rather provides for the designation of individual buildings or structures as historic.

■■■ Appellees contend that a temporary "freezing" of property in order to give the City Council time to consider it for historical zoning is a legitimate exercise of the police power, citing *City of Dallas v. Crownrich*, 506 S.W.2d 654 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.). Our opinion in *Crownrich*, however, is not authority for the proposition that such a temporary period

may extend indefinitely. Although Section 45–51.1 provides for a sixty-day time limit after which its restrictions do not apply to property which the Landmark Commission fails to recommend be designated a historic landmark, there is no time limit on the action to be taken by the Planning Commission or the City Council. In other words, if the Landmark Commission *does* recommend that the property or a part of it be designated a historic landmark, the restrictions of Section 45–51.1 continue to apply until either the first or third terminating event occurs. (As a practical matter, only the third terminating event would be likely to occur.) We hold, therefore, that Section 45–51.1 is constitutionally defective in that it acts to deprive property owners of their property without due process as well as depriving them of the equal protection of the laws, because it fails to provide a reasonable time limit on final City Council action after a parcel of property has been listed on the agenda of the Landmark Commission.

▮ Another defect in Section 45–51.1 is its complete lack of standards for guidance of the persons who may place its restrictions on landowners merely by listing their property on the Commission's agenda. One of the primary requisites of a valid zoning ordinance is certainty. A particular zoning enactment or provision thereof may be judicially declared to be inoperative and void for uncertainty, vagueness, or indefiniteness. 63 Tex.Jur.2d Zoning Section 19, at p. 764. In the instant case, Section 45–51.1 would allow the chairman, any vice-chairman, or the executive secretary of the Landmark Commission, each at his own discretion, to place a parcel of property on the agenda of the Commission, thereby causing the restrictions of the section to attach for perhaps a minimum of sixty days. This is a power over the property of landowners in the City of Austin which must be harnessed by appropriate standards and guidelines. *Texas Antiquities Committee v. Dallas County Community College District*, 554 S.W.2d 924 (Tex.1977). This applies with particular force in view of the penal provisions of Section 45–54.

Accordingly, we hold that Section 45–51.1 of Article IV of the Austin City Code is unconstitutional as applied to appellants' property here involved.

As an incidental matter, we are called upon by motion contained within appellants' reply brief to strike a portion of Exhibit B of the appendix to appellees' brief, the offensive portion being a copy of City of Austin Ordinance No. 760126–A which adds Section 45–56 to Article IV. The grounds for said motion are that the ordinance, dated January 26, 1978, was not in existence when this case was tried in the court below and thus is not a proper part of the record of the proceedings before that court. Appellees, in oral argument, have agreed to the motion to strike. Therefore, we hereby grant said motion and order that portion of the appendix to appellees' brief containing a copy of Ordinance No. 760126–A stricken from the record before this Court.

▮ In view of our disposition of this appeal, we do not find it necessary to make specific rulings on appellants' points of error one through five. As for point of error six, inasmuch as we have declared Section 45- 51.1 to be invalid, we do not feel it necessary here and now to enjoin the City from enforcing it (or the remainder of Article IV) against the hotel property; point six is overruled.

▮ Although the City filed a notice of appeal with regard to the dismissal of the Driskill Operating Company as a party plaintiff by the judgment below, it brings no cross-point to this court complaining of that action; thus, there is nothing before us to act upon with regard to that matter. Rules 418 and 420, T.R.C.P.; *Wall v. Patton*, 474 S.W.2d 22, 27 (Tex.Civ.App.—Texarkana 1971, writ ref'd n. r. e.). Appellees do bring a cross-point, however, directed to alleged error by the trial court in refusing to make additional findings of fact and conclusions of law as requested by appellees. None of the requested findings and conclusions are material to our disposition of this appeal; if there is any error, therefore, it is harmless.

Rule 434, T.R.C.P. Appellees' cross-point is overruled.

That portion of the trial court's judgment in which he refused to render a declaratory judgment on the validity of Section 45–51.1 is reversed and judgment is here rendered that such section is invalid and void; in all other respects, the judgment of the trial court is affirmed.