Marjorie HAWKINS, et al, Appellants,

v.

TEXAS OIL AND GAS CORPORATION, et al, Appellees.

No. 10–86–021–CV.

Court of Appeals of Texas, Waco.

Jan. 22, 1987.

Rehearing Denied Jan. 22, 1987.

James C. Baker, Rider & Wilson, Galveston, David B. Kultgen, Beard & Kultgen, Waco, for appellants.

Beverly Willis Bracken, Sue Stepp Raybold, Naman, Howell, Smith & Lee, P.C., Waco, Roy Hill, Hugh D. Reed, Jr., Fairfield, for appellees.

Patty L. Akers, Fairfield, for Fairfield State Bank.

## OPINION

THOMAS, Justice.

This is an appeal from a summary judgment in a declaratory judgment and inter-pleader proceeding. The controversy involves the interpretation of a 1930 deed which conveyed oil and gas interests under 54.2 acres "subject to" a Humble oil and gas lease that has since expired. The principal question is whether the grantees owned a royalty interest or a mineral interest after the lease's expiration. Treating the instrument as unambiguous, the court interpreted the deed as conveying a permanent royalty interest. The "two-grant theory" and the decision in *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984), are at the center of the parties' dispute over the deed's interpretation. The summary judgment will be affirmed.

The deed was from H.M. York and wife, Susie York, to W.S. York and Max Scharff. Marjorie Hawkins and Phillip Baker, the successors to whatever interest Scharff acquired under the deed, filed the suit against the Fairfield State Bank, John and Kathryn Alford and Texas Oil and Gas Corporation.[1] They also joined as defendants Shirley York Bates and Sybil York Estes who, as successors to the interest of W.S. York, were later realigned as plaintiffs. Bates and Estes have not appealed from the summary judgment. The interests acquired by Bates and Estes under the deed, being identical to those acquired by Hawkins and Baker, are not discussed in the opinion. Asking for a construction of the deed and essentially relying on the two-grant theory, Hawkins and Baker claimed that the deed's granting clause conveyed a royalty interest, which terminated upon the expiration of Humble's lease, followed by a grant to Scharff in the future-lease clause of a ¼th mineral interest. Hawkins and Baker are now the appellants.

Fairfield State Bank, the Alfords and Texas Oil and Gas all argued in their pleadings and in motions for a summary judgment that an irreconcilable conflict existed between the deed's granting clause and future-lease clause and that based on the decision in *Alford v. Krum* the conveyance

---

1. Due to John Alford's death, Kathryn Alford answered the suit individually and as the legal representative of her husband's estate. References in the opinion to "the Alfords" include Kathryn Alford and her husband's estate.

in the granting clause of a permanent royalty interest must prevail. Therefore, they contended that the Bank and the Alfords owned all of the minerals under the 54.2 acres as successors to the interests of H.M. York and Susie York, burdened equally by the royalty interest conveyed in the granting clause.

The court allowed TXO Production Corporation, a wholly-owned subsidiary of Texas Oil and Gas, to intervene in the suit because it held two oil and gas leases covering the 54.2 acres. Fairfield State Bank and the Alfords executed the first lease (Bank-Alford lease) in 1977, purportedly leasing all of the minerals for a ⅛th royalty. Hawkins and Baker refused to accept royalty payments under this lease or to ratify it because they claimed ownership of a ¼th mineral interest through Scharff. Texas Oil and Gas then acquired the second lease (Hawkins-Baker lease) in which Hawkins and Baker purportedly leased their ¼th mineral interest for a ⅛th royalty. Prior to the suit, Texas Oil and Gas contributed both leases to the Williford Gas Unit No. 1 and assigned the leases to TXO. Two producing wells were drilled prior to the suit on acreage in the gas unit other than the 54.2 acres. Because of the controversy over the ownership of the minerals covered by its two leases, Texas Oil and Gas withheld royalty payments on the disputed ¼th mineral interest.

By counterclaims and cross-claims, Texas Oil and Gas, TXO, Fairfield State Bank and the Alfords all asked for a construction of the deed through a declaratory judgment. Texas Oil and Gas and TXO also deposited $61,353.73 into the court's registry, claiming that they were disinterested stakeholders of this amount of suspended royalty payments. However, they later claimed through an amendment that they had interplead $2,139.50 of the $61,353.73 through an error or mistake. In addition to seeking a return of the $2,139.50, Texas Oil and Gas and TXO also sued for attorney's fees as interpleaders and as petitioners for a declaratory judgment. Fairfield State Bank and the Alfords also sought attorney's fees in connection with their declaratory-judgment actions.

Texas Oil and Gas and TXO moved for a summary judgment on the grounds the summary judgment evidence conclusively established that: (1) the deed only conveyed a ¹⁄₃₂nd royalty interest to York and Scharff; and (2) Hawkins and Baker were not entitled to recover any of the suspended royalty payments deposited in the court's registry because they had not ratified the Bank-Alford lease or consented to the pooling of their royalty interest in the gas unit. The Bank and the Alfords also moved for a summary judgment on virtually these same grounds.

In a written response to the motion filed by Texas Oil and Gas and TXO, Hawkins and Baker argued that: (1) regardless of the deed's interpretation, Texas Oil and Gas and TXO were estopped by the Hawkins-Baker lease from denying that they were entitled to be paid a ⅛th royalty based on the production from the gas unit; (2) the deed conveyed a ¼th mineral interest to Scharff as a matter of law; (3) they had ratified the gas unit and consented to the pooling of their "undivided interest" in the gas unit as a matter of law; (4) Texas Oil and Gas and TXO were estopped from contending that they had not pooled their interest in the gas unit because Texas Oil and Gas and TXO had, in fact, pooled their interest or at least the evidence raised a fact issue on whether their interest had been pooled; and (5) Texas Oil and Gas and TXO were not entitled to recover attorney's fees as disinterested stakeholders because, as a matter of law, they had each taken positions as adverse parties. Hawkins and Baker also alleged in a written response to the motion filed by the Bank and the Alfords that the deed conveyed a ¼th mineral interest to Scharff as a matter of law and that, in any event, the Bank and the Alfords, as successors in interest to H.M. York and Susie York, were estopped by the deed from disputing their ownership of a ¼th mineral interest.

None of the parties claimed in the trial court that the deed was ambiguous. The court interpreted the deed as conveying a "¼ of ⅛ royalty interest" to W.S. York and Scharff and "not the grant of a 'mineral'

interest." Moreover, the court held that Hawkins and Baker each owned "¼ of ¼ of the ⅛ royalty" in the 54.2 acres and under the Bank-Alford lease but were not entitled to recover any royalty payments under the Bank-Alford lease until they ratified it or consented in writing to having their royalty interest pooled in the gas unit. Furthermore, it held that the Bank owned ½ of the minerals under the 54.2 acres and that the Alfords owned the remaining ½ of the mineral estate.

Interpretation of an unambiguous deed is a question of law for the court. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). A court's primary duty in interpreting such an instrument is to ascertain the intent of the parties by applying the "four-corners rule". *Id.* Intent must be determined from the meaning of the deed's provisions, as written, and not from what the parties thought but failed to say or meant to say. *Alford v. Krum*, 671 S.W.2d at 872. Because parties to a deed intend every clause to have some effect and in some measure to evidence their agreement, the court must attempt to harmonize, if reasonably possible, and give effect to all of its parts and clauses. *Id.* Only when two or more provisions conflict irreconcilably can the court prefer one clause over another in determining the parties' intent. *Id.* If all of the provisions cannot be harmonized because of an irreconcilable conflict, then the court must give effect to "the controlling language" of the deed and not allow ambiguities to "destroy the [parties'] key expression of intent" as written. *Id.* The "controlling language" and "key expression of intent" will be found in the deed's granting clause. *Id.* The deed's relevant provisions and the arguments of the parties will be examined with these rules in mind.

The deed contained the following provisions which are numbered in the sequence they appear in the instrument:

1. The granting clause conveyed to W.S. York and Max Scharff "¼ of the ⅛th royalty interest in and to all of the oil, gas and other minerals in and under and that may be produced from ... [the 54.2 acres in question]."

2. A parenthetical clause, apparently typewritten or handwritten by the parties into the deed immediately following the property description, then provided: [2]

   (It is agreed that Grantees, shall have no part or interest in any of the bonus money received by the said H.M. York, in any [future] lease or leases, given on said land, and it shall not be necessary for the said Grantees, to join in any such lease or leases so made; That Grantees shall have and receive under such lease or leases One-[Fourth] part of all the oil, gas and other minerals taken and saved under such lease or leases, and he shall receive the same out of the royalty provided for in such lease or leases, but the said Grantees, shall have no part in the annual rentals paid to the said H.M. York, to keep the lease or leases in force until drilling is begun.[ )]

3. The subject-to clause made the conveyance subject to Humble's lease but provided that it "covers and includes One-Fourth, of all the ... [⅛th] royalty due and to be paid under the terms of said lease."

4. The future-lease clause provided:

   It is agreed and understood that None of the money rentals which may be paid to extend the term within which a well may be begun under the terms of said lease is to be paid to the said W.S. York, & Max Scharff, and in the event that the said above described lease for any reason becomes cancelled or forfeited, *then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by H.M. York, and Susie York, and W.S. York, & Max Scharff, each owning One-Fourth, interest in all oil, gas and other minerals in and upon said*

**2.** A typed copy of the deed, certified as recorded, was introduced into evidence at the trial because the original was unavailable.

*land, together with No interest in all future rents.*

(Emphasis added). As previously noted, the court interpreted the deed as conveying a "¼ of ⅛ royalty interest" to York and Scharff rather than a mineral interest.

Hawkins and Baker attack the court's interpretation of the deed in their first three points of error. Essentially, they argue that the deed was unambiguous and made two separate grants: (1) the granting clause conveyed a royalty interest which terminated with the expiration of Humble's lease; and (2) the future-lease clause conveyed to York and Scharff each a "present" ¼th mineral interest which "followed" the termination of the royalty interest.[3] Therefore, they reason that the Bank and the Alfords, as successors to H.M. York and Susie York, cannot own more than ½ of the mineral estate as a matter of law, with the remaining ½ of the minerals being owned by the successors to W.S. York and Scharff. As successors to Scharff's interest, Hawkins and Baker insist that they jointly own a ¼th mineral interest as a matter of law.

Fairfield State Bank, Texas Oil and Gas and TXO all argue on appeal, as they did in the trial court, that an irreconcilable conflict existed between the deed's granting clause, which purportedly conveyed a permanent royalty interest, and the future-lease clause which purportedly conveyed a mineral interest. Based on the decision in *Alford v. Krum*, they contend that the court had to resolve the conflict by giving controlling effect to the granting clause or, otherwise, it would have destroyed "the key expression of intent" in the deed. The Bank interprets the decision in *Alford v. Krum* as signaling that the "old rules of interpretation of subject-to deeds should no longer be followed" because they are "too cumbersome and complicated to be an integral part of land title analysis."

Countering these arguments, Hawkins and Baker attempt to distinguish the deed in *Alford v. Krum* from the deed to

Scharff by pointing out that the instrument in *Alford v. Krum* purportedly conveyed a ¹⁄₁₆th *mineral* interest in the granting clause and a ½ *mineral* interest in the future-lease clause. They argue that the irreconcilable conflict in that deed resulted from different fractional interests of the mineral estate being conveyed by the granting clause and future-lease clause. They contrast that deed with the two grants in Scharff's deed which purportedly conveyed a *royalty* interest in the granting clause and a *mineral* interest in the future-lease clause. Based on this difference between the two instruments, Hawkins and Baker argue that the decision in *Alford v. Krum* is not controlling but should be limited to "similar" fact situations. Thus, they charge that the court erred as a matter of law when it did not harmonize and give effect to all of the deed's provisions.

The first three points of error cannot be sustained for at least two reasons. First, the granting clause conflicts irreconcilably with the future-lease clause, based on the decision in *Alford v. Krum*, and the granting clause must prevail to the extent of the conflict. Second, the structure of the conveyance also does not qualify for a favorable interpretation under the decision in *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (1957).

### *Two-Grant Theory*

The two-grant theory had its inception in *Hoffman v. Magnolia Petroleum Co.*, 273 S.W. 828 (Tex.Comm'n App.1925, holding approved), in which a deed's granting clause conveyed an undivided ½ mineral interest under a specific 90–acre tract carved out of a larger tract of 320 acres. The subject-to clause made the mineral conveyance subject to an existing lease covering the 320–acre tract but also provided that the deed covered and included ½ of the royalty to be paid under "said lease." Production was obtained on acreage in the 320–acre tract, but the producing wells had not been drilled on the 90 acres. The ques-

---

3. Hawkins and Baker describe the royalty interest as a "term royalty". This court accepts their description for the purpose of analysis.

tion in *Hoffman* was whether the grantee was entitled to ½ of the royalties payable under the 320–acre lease even though production had not been obtained on the 90 acres covered by the deed.

Treating the instrument as unambiguous, the Texas Commission of Appeals held that the deed actually contained two separate grants: (1) the granting clause conveyed "an undivided one-half interest in the possibility of a reverter of the oil in place under the 90 acres"; and (2) the subject-to clause conveyed "a one-half interest in the royalty to accrue under the terms of the lease as an entirety [on the 320 acres]". *Id.* at 830. The Commission of Appeals emphasized that in ascertaining the intent of the parties a well-settled rule of construction required it to consider the deed as a whole and to give effect, if possible, to all of its clauses. *Id.* at 829–30. The Texas Supreme Court approved the holding. *Id.* at 831.

Subsequent to *Hoffman*, the Texas Supreme Court expressly recognized and applied the two-grant theory in at least three notable decisions. In *Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563, 564–65 (1945), the Court held that a subject-to deed made two separate and distinct grants: (1) a grant of a permanent $\frac{1}{128}$th mineral interest which was determined by the granting clause and the future-lease clause; and (2) a $\frac{1}{1024}$th royalty which was determined by the subject-to clause. The Court treated the deed as unambiguous and purportedly based its decision on the two-grant theory announced in *Hoffman*. The language in *Richardson* supporting the two-grant doctrine has been labeled "dicta" because the granting clause and subject-to clause were internally consistent: i.e., a $\frac{1}{1024}$th royalty is incident to a $\frac{1}{128}$th mineral interest. *See* 2 H. Williams & C. Meyers, Oil and Gas Law § 340.2 at 236–37 (1985).

In its 1953 decision in *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166, 168 (1953), the Texas Supreme Court once again expressly recognized the two-grant theory and applied it to a deed which did not even contain a subject-to clause. The Court held that a reservation to the grant-

ors of a ⅜ths mineral interest was reduced to a ⅛th mineral interest because of the rule in *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940), but that the grantors were nevertheless entitled under a separate clause in the deed to receive ⅜ths of the benefits under leases executed by the grantee. The clause on which the Court based the second grant provided that any leases executed by the grantee, who held the executive right, had to provide that ⅜ths of the lease benefits must be paid to the grantors. The Court cited *Hoffman* and *Richardson*.

In *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954), the granting clauses in three identical subject-to deeds conveyed an undivided $\frac{25}{200}$ mineral interest in a tract thought to contain 200 acres but which actually contained 226.88 acres. The subject-to clause in each deed made the $\frac{25}{200}$ mineral conveyance subject to an existing lease but provided that it covered and included $\frac{25}{200}$ of the existing lease's royalty. The parties accepted the trial court's ruling that the granting clauses in the deeds conveyed an aggregate 47.5/226.88 of the mineral estate. However, treating the deeds as unambiguous, the Court held that the grantees, although owning an aggregate of 47.5/226.88 of the mineral estate, also acquired under the subject-to clauses an aggregate 47.5/200 of the existing lease's royalty. The Court expressly based its interpretation on *Hoffman*, *Richardson* and *Benge*.

The decision in *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (Tex.1957), which is often discussed in connection with the two-grant theory, is not addressed at this point in the opinion because, as explained later, it was not based on the two-grant doctrine. *See* 2 H. Williams & C. Meyers, Oil and Gas Law § 340.2 at 237–38 (1985). However, the decision will be analyzed later and rejected as a basis for sustaining the first three points of error.

The holding in *Hoffman*, which launched the two-grant theory in Texas oil and gas law, has drawn sharp criticism from respected legal commentators. *See e.g.*, Williams, *HOFFMAN V. MAGNOLIA PE-*

TROLEUM CO.: THE "SUBJECT-TO" CLAUSE IN MINERAL AND ROYALTY DEEDS, 30 Tex.L.Rev. 395 (1952); Meyers & Williams, Hoffman v. Magnolia Petroleum Co.: A Further Comment, 35 Tex.L. Rev. 363 (1957); 2 H. Williams & C. Meyers, Oil and Gas Law § 340.1–.2 (1985). Lamenting the theory's influence, the critics base their criticism primarily on the twin assertions that the doctrine not only ignores obvious ambiguities, which should be resolved by the admission of extrinsic evidence to determine the parties' true intent, but dignifies the subject-to clause as a granting clause. They point out that the subject-to clause, which usually transfers to the grantee by express language a portion of an existing lease's benefits, was developed in response to the decision in Caruthers v. Leonard, 254 S.W. 779 (Tex. Comm'n App.1923), in which the Commission of Appeals held that a conveyance of minerals did not, without express mention, transfer a proportionate share of an existing lease's royalty and delay rentals. The Texas Supreme Court expressly rejected Caruthers in Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302, 306 (1943), in which it held that a grant of minerals, made subject to an existing lease, conveyed by operation of law the possibility of reverter and a share of the existing lease's royalty and delay rentals in proportion to the conveyance of the mineral estate. The theory's detractors contend that, after Harris, the subject-to clause became unnecessary, a provision which in the hands of an inept draftsman usually creates confusion and litigation. See also Elliott, The Fractional Mineral Deed "Subject-To" a Lease, 36 Tex.L.Rev. 620 (1958). Despite the criticism of the two-grant theory, which first appeared in 1952, the Texas Supreme Court nevertheless expressly recognized and applied the doctrine in its 1953 decision in Benge and its 1954 decision in Woods.

With the decisions in Hoffman, Richardson, Benge and Woods as a background, an analysis of Alford v. Krum, 671 S.W.2d 870 (Tex.1984), is in order. The deed in Alford v. Krum had a granting clause, a subject-to clause, and a future-lease clause. The granting clause conveyed a ¹⁄₁₆th (½ of ⅛th) mineral interest; the subject-to clause transferred a ¹⁄₁₂₈th (¹⁄₁₆th of ⅛th) royalty in the existing lease; the future-lease clause provided that upon cancellation or forfeiture of the existing "the lease interests and all future rentals ... shall be owned jointly by [the grantors and grantee,] each owning a one-half interest" in the mineral estate, "together with one-half interest in all future rents." Id. at 871–72. Because the existing lease had expired, the question before the Court was what quantum of the mineral estate had the parties intended to convey.

After emphasizing that its interpretation was controlled by "[l]ongstanding rules of interpretation and construction", including the rule that a court must attempt to harmonize and give effect to all parts of a deed, the Court held that an irreconcilable conflict existed between the granting clause and the future-lease clause, which required it to resolve the conflict in favor of the granting clause. Id. at 872–73. It noted that the "key expression of intent" was to be found in the granting clause of a deed, which defined the nature of the estate conveyed, while the purpose of the future-lease clause "[was] to explain or restate the operative effect of the grant in the granting clause in the event that any present lease terminated and future leases were executed." Id. Accordingly, the Court determined that the parties intended to convey, as specified in the "clear and unambiguous language of the granting clause", a permanent ¹⁄₁₆th mineral interest. Id. at 874.

In a dissenting opinion joined by two other justices, Chief Justice Pope charged the majority with ignoring the two-grant theory and failing to harmonize and give effect to the grant of a ¹⁄₁₆th mineral interest before the lease's expiration and the grant after the lease's expiration of a ½ mineral interest. Id. at 874–75 (Pope, C.J., dissenting). Citing Woods and Richardson in support of his proposed two-grant solution, he described the lease's expiration as the "ridgepole" which divided the two grants. Id. at 874. Finally, Judge Pope also suggested that the method and anlysis

employed in *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (1957), should have been used as a guide in interpreting the deed. *Id.* at 876.

If *Alford v. Krum* abolished the two-grant theory, then it must have done so by implication because the majority opinion does not mention the doctrine or cite *Hoffman*, *Richardson*, *Benge* or *Woods* as cases to be overruled.[4] However, considering the clear-cut basis for the dissent, one must admit that the two-grant theory had been squarely proposed as a solution. Because of the doctrine's impact on the development of Texas oil and gas law and the decisions in which the Texas Supreme Court had not only embraced but perpetuated the two-grant theory, that the Texas Supreme Court would abolish the doctrine by implication, although possible, seems unlikely. This court does not interpret the decision in *Alford v. Krum* as affecting the viability of the two-grant doctrine. Unlike the deed in *Alford v. Krum*, none of the decisions highlighted above as illustrating the two-grant theory involved an expansion or limitation of the granting clause by a subsequent clause in the deed. Instead, the second grant was compatable with and in addition to whatever interest was conveyed by the granting clause. This cannot be said of the deed in *Alford v. Krum* nor of the deed to Scharff.

■ The Court did not explain in *Alford v. Krum* why the granting clause and the future-lease clause were repugnant. However, the irreconcilable conflict could have arisen because the granting clause expressly conveyed a specific fractional mineral interest while the future-lease clause, the purpose of which is to "explain or restate the operative effect of the grant", "explained" or "restated" the effect of the grant after the existing lease's termination as a different fractional mineral interest. Such produces an irreconcilable conflict.

See *Associated Oil Co. v. Hart*, 277 S.W. 1043, 1044 (Tex.Comm'n App.1925, holding approved) (citing *Freudenberger Oil Co. v. Simmons*, 75 W.Va. 337, 83 S.E. 995, 998 (1914), for a "satisfactory discussion of the whole question"). The granting clause in the *Associated Oil Co.* deed conveyed tracts of land by *general* description and by metes and bounds and, unlike the deed in *Alford v. Krum*, did not specifically grant any of the minerals. *Id.* at 1043. The Commission of Appeals held that a subsequent clause, which reserved minerals under a portion of the land that had been conveyed by general description, did not conflict with the granting clause. *Id.* at 1044. However, it noted: "[I]f the deed had expressly granted the minerals, the subsequent attempt to except them would have been void." *Id.* Although the deed in *Alford v. Krum* did not contain a reservation or exception, the court was nevertheless faced with a situation analagous to that envisioned in the hypothetical quoted above.

■ The holding in *Alford v. Krum* must also control the interpretation of the deed to Scharff because of the similarity between the deeds. The granting clause in Scharff's deed expressly conveyed a ¹⁄₃₂nd fractional royalty rather than a grant by general description of a fee interest. The future-lease clause "explained" or "restated" the effect of the grant to Scharff upon the termination of Humble's lease as a ¹⁄₄th mineral interest. Based on the decisions in *Associated Oil Co.* and *Alford v. Krum*, the future-lease clause in Scharff's deed conflicted irreconcilably with the granting clause and was thus void to the extent of its conflict. Accordingly, the question of whether Hawkins and Baker could rely on the two-grant doctrine is never reached because Scharff only acquired a royalty interest under the granting clause. Points one through three are overruled.

---

**4.** The majority did cite *Richardson* and *Woods* in support of the statement that "Texas courts generally have treated the fractional interests in the last phrase of the future lease clause as nothing more than a restatement or confirmation of the interest deeded in the previous portions of the instrument." *Alford v. Krum*, 671

S.W.2d at 873. Ironically, *Woods* was also cited by the majority as authority for the rule of construction which required the Court to "attempt to harmonize all parts of a deed, since the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." *Id.* at 872.

### Garrett v. Dils Company

■ The deed in *Garrett v. Dils Company*, 157 Tex. 92, 299 S.W.2d 904 (1957), contained a granting clause, a subject-to clause, and a future-lease clause. The granting clause purportedly conveyed an "undivided one sixty-fourth" mineral interest; the subject-to clause transferred ⅛th of the existing lease's ⅛th (¹⁄₆₄th) royalty; and the future-lease clause provided that the grantee was entitled to ⅛th of any delay rentals paid to extend the existing lease and, if the existing lease expired, "then and in that event an undivided one-eighth of the lease interest and all future rentals ... shall be owned by said Grantee, he owning one-eighth of one-eighth [¹⁄₆₄th] of [the minerals], together with one-eighth interest in all future rents." *Id.* at 905. The existing lease terminated and producing wells were drilled under a subsequent lease which also paid a ⅛th royalty. The question was whether the grantee owned a ¹⁄₆₄th mineral interest or a ⅛th mineral interest.

Without citing *Hoffman, Richardson, Benge* or *Woods* or mentioning the two-grant doctrine, the Texas Supreme Court held that the grantee acquired "in reality" a ⅛th mineral interest under the deed. *Id.* at 907. While acknowledging that the parties had clearly stated in the granting clause that a ¹⁄₆₄th mineral interest was being conveyed to the grantee, the Court held that other language in the deed "disclosed what the parties understood 'one sixty-fourth' to mean". *Id.* at 906. It noted that the grantee acquired under the subject-to clause and the future-lease clause ⅛th of the existing lease's royalty and delay rentals and, if the existing lease expired, ⅛th of the "lease interest [i.e., right to lease] and future rentals". *Id.* Because the grantee had acquired all of the rights incident to an ownership of a ⅛th mineral interest, the Court held that the parties intended to convey a ⅛th mineral interest rather than the quantum of the mineral interest which the parties had described in the granting clause as ¹⁄₆₄th of the mineral estate. *Id.* at 907.

Some confusion exists over whether *Garrett* was based on the two-grant doctrine. The confusion apparently stems from Judge Norvell's dissent in which he discussed the two-grant theory, cited *Richardson* and *Woods*, and posed the question of "whether there [was] other language in the deed which would *expand* or *increase* the [¹⁄₆₄th mineral] interest specifically conveyed in the formal granting clause to an undivided ⅛th interest." *Id.* at 907 (Norvell, J., dissenting) (emphasis added). Judge Pope stated in his dissent in *Alford v. Krum* that "the *Garrett* court held that a different and a greater interest was conveyed upon the reverter of the outstanding lease." *Alford v. Krum*, 671 S.W.2d at 876 (Pope, C.J., dissenting). However, some legal commentators contend that *Garrett* "ignored" or "departed from the two-grant doctrine". *See* 2 H. Williams & C. Meyers, Oil and Gas Law § 340.2 at 237 (1985); R. Hemmingway, The Law of Oil and Gas § 9.1 at 461 (1983).

The majority did not purport to base its interpretation of the *Garrett* deed on the two-grant theory. It did not mention the doctrine or cite any of the cases associated with it. An analysis of the majority opinion reveals that the Court did not interpret the subject-to deed as making one grant in the granting clause of a ¹⁄₆₄th mineral interest which was expanded to a ⅛th mineral interest by a second grant in the future-lease clause. Instead, applying the four-corners rule, it held that the true intent of the parties, as disclosed by the rights transferred to the grantee under the subject-to clause and the future-lease clause, was to convey a ⅛th mineral interest rather than the ¹⁄₆₄th mineral interest clearly expressed in the granting clause.

Essentially, the Court ascertained the parties' intent from the quantum of the rights acquired by the grantee in clauses outside of the granting clause. The question arises whether the method of analysis employed in *Garrett*, if applied to Scharff's deed, would indicate that the parties "understood" and "construed" the royalty interest, as expressed in the granting clause, to really be a mineral interest.

The granting clause conveyed to Scharff a $\frac{1}{64}$th royalty ($\frac{1}{2}$ of a $\frac{1}{32}$nd royalty) under the 54.2 acres. The subject-to clause also transferred to him a $\frac{1}{64}$th ($\frac{1}{2}$ of $\frac{1}{4}$th of $\frac{1}{8}$th) royalty in Humble's lease. However, the future-lease clause provided that he would not receive any of the delay rentals paid to extend Humble's lease. If the parties had intended to bestow on Scharff a share of royalty incident to the ownership of a $\frac{1}{4}$th mineral interest, then he would have received a $\frac{1}{32}$nd ($\frac{1}{4}$th of $\frac{1}{8}$th) royalty in Humble's lease plus $\frac{1}{4}$th of the lease's delay rentals. Thus, Scharff did not acquire all of the rights equivalent to the ownership of a $\frac{1}{4}$th mineral interest. Applying the method of analysis in *Garrett* to Scharff's deed, one cannot say that the parties "understood", "construed" and intended the $\frac{1}{64}$th royalty interest expressly conveyed to Scharff in the granting clause to really be a $\frac{1}{4}$th mineral interest. Accordingly, the structure of Scharff's deed will not qualify even under *Garrett* for the interpretation proposed by Hawkins and Baker.

The court correctly interpreted the deed as conveying a permanent royalty interest to W.S. York and Scharff rather than a mineral interest. Likewise, the court correctly held that the mineral estate was jointly owned by the Bank and the Alfords as successors in interest to H.M. York and Susie York. The first three points of error are overruled.

■ The fourth point of error raises the issue of whether the deed estopped Fairfield State Bank and the Alfords, as the grantors' successors, from questioning the $\frac{1}{4}$th mineral interest purportedly conveyed to Scharff by the future-lease clause. A party who derives his title through a grantor in a deed is estopped, just like his predecessor, from denying the deed and its recitals. *See Greene v. White*, 137 Tex. 361, 153 S.W.2d 575, 583–84 (1941). Thus, Hawkins and Baker argue that the doctrine of estoppel by deed prevented the Bank and the Alfords from attacking their ownership of a $\frac{1}{4}$th mineral interest.

Estoppel by deed is a defensive doctrine which cannot be used to create a right where none existed. *Southland Life Ins. Co. v. Vela*, 147 Tex. 478, 217 S.W.2d 660, 663 (1949). Its function is not to create rights but to preserve them. *Id.* Consequently, estoppel by deed cannot be used to confer upon the grantee a greater title than the deed would have conferred had it been effective. *Chace v. Gregg*, 88 Tex. 552, 32 S.W. 520, 522 (1895).

Because Hawkins and Baker did not acquire any interest in the mineral estate as Scharff's successors, they cannot rely on estoppel by deed to create in themselves an enforceable right to a $\frac{1}{4}$th mineral interest where no such right pre-existed. *See id.* Point four is overruled.

After the dispute developed over the ownership of the $\frac{1}{4}$th mineral interest, Hawkins and Baker executed a lease to Texas Oil and Gas in which they purportedly leased their $\frac{1}{4}$th mineral interest for a $\frac{1}{6}$th royalty. Prior to the suit, Texas Oil and Gas pooled whatever interest it acquired under the lease in the gas unit and assigned the lease to TXO. Hawkins and Baker contend in point six that Texas Oil and Gas and TXO were estopped by the terms of the lease from denying the lease or that they, as lessors, were entitled to receive the $\frac{1}{6}$th royalty based on the production in the gas unit.

■ An owner of the mineral estate is the only person with authority to execute an oil and gas lease. *Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077, 1079 (1935). A purported lease executed by a royalty owner is void. *See* 1 H. Williams & C. Meyers, Oil and Gas Law § 303.3 at 456 (1985). Therefore, the purported lease from Hawkins and Baker, who owned only a royalty interest, was void and did not convey any interest to Texas Oil and Gas or create or reserve any corresponding rights in them as lessors. As already noted, the doctrine of estoppel cannot create rights where none exist. *See Southland Life Ins. Co.*, 217 S.W.2d at 663. Accordingly, Texas Oil and Gas and TXO were not estopped from contesting Hawkins' and Baker's rights under the void lease. Furthermore, the void lease did not grant their legally binding "consent" for

the pooling of their royalty interest. Point six is overruled.

■ The court interpreted the granting clause as conveying a "¼ of ⅛ royalty interest". Hawkins and Baker, who are joined in this particular argument by the Bank, contend in point five that the parties intended to convey "¼ *of* the ... royalty" (i.e., a fraction *of* the lease royalty) rather than a ½nd fractional royalty. (Emphasis added). Thus, they argue that York and Scharff equally shared ¼th of whatever royalty was retained in any lease covering the 54.2 acres. They assert that the parties' intent can be gleaned from the consistent use of the "One-Fourth" fraction in the other clauses to describe the share of the royalty transferred to the grantees in Humble's lease or any future lease. The owner of a ½nd fractional royalty is entitled to one out of every thirty-two parts of production regardless of the royalty retained in any lease. 2 H. Williams & C. Meyers, Oil and Gas Law § 327.1 at 84 (1985). However, the share of production received by the owner of ¼th of lease royalty will fluctuate depending on the amount of lease royalty. *Id.* Hawkins and Baker contend that they were entitled, as Scharff's successors, to share ¼th of the ⅙th royalty provided for in the Hawkins-Baker lease based on production in the gas unit.

■ As noted in connection with the disposition of the sixth point, the Hawkins-Baker lease was void and did not create any enforceable right to the ⅙th royalty. Consequently, Hawkins' and Baker's argument must be rejected to the extent they claim to share in ¼th of the ⅙th royalty retained in their purported lease. However, the question remains whether the court correctly interpreted the granting clause as conveying a ½nd fractional royalty.

A conveyance of "½ of the ⅛th royalty interest" has been held to convey a ¹⁄₁₆th fractional royalty, entitling the royalty owner to one out of every sixteen parts of production regardless of the royalty retained in any lease. 2 H. Williams & C. Meyers, Oil and Gas Law § 327.1 at 83 (1985). The court correctly interpreted the granting clause, which conveyed "¼ of the ⅛ royalty interest", as conveying a ½nd fractional royalty to W.S. York and Scharff. Because Scharff owned ½ of the ½nd royalty interest (i.e., one out of every sixty-four parts of production), Hawkins and Baker each acquired through Scharff a ¹⁄₁₂₈th fractional royalty. This entitled each of them to one out of every one hundred twenty-eight parts of production from the 54.2 acres regardless of the royalty retained in any lease. Therefore, the court correctly held that Hawkins and Baker each owned a "¼ of ¼ of ⅛ [¹⁄₁₂₈th] royalty". Point five is overruled.

■ Prior to the suit, Texas Oil and Gas contributed the Bank-Alford lease and the Hawkins-Baker lease to the gas unit, and production was obtained on acreage in the unit other than the 54.2 acres. Texas Oil and Gas interplead the suspended royalties attributable to the disputed ¼th mineral interest and asked the court to distribute the deposited funds in accordance with the parties' interests. The court held that Hawkins and Baker, who jointly owned a ¹⁄₆₄th royalty, were not entitled to receive any portion of the suspended royalty payments or any future royalties under the Bank-Alford lease until they either ratified the lease or consented in writing to the pooling of their royalty interests in the gas unit.

Hawkins and Baker contend in points seven through ten that they were entitled to their share of the production from the pool because: (1) Texas Oil and Gas had authority to pool their interest, whether mineral or royalty, under the Hawkins-Baker lease which contained a standard pooling provision; (2) Texas Oil and Gas was estopped by the Hawkins-Baker lease from denying that it had the authority to pool their royalty interest; (3) they had ratified Texas Oil and Gas's action in pooling their royalty interest in the gas unit even if Texas Oil and Gas had acted without legal authorization; and (4) they had ratified the pooling of their royalty interest in the gas unit in their second amended petition.

When H.M. York and Susie York conveyed the royalty interest to W.S. York and Scharff, they retained ownership of the mineral estate which included the right to execute leases, commonly called the executive right. Fairfield State Bank and the Alfords acquired the executive right with the mineral estate when they succeeded to the interest of H.M. York and Susie York. *See Campbell v. Dreier,* 382 S.W.2d 179, 183 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.).

The owner of the executive right cannot bind a royalty owner's interest under a lease or pool that interest unless the royalty owner either joins in the lease, ratifies it or otherwise consents to the pooling. *Montgomery v. Rittersbacher,* 424 S.W.2d 210, 212–13 (Tex.1968); *see Brown v. Smith,* 141 Tex. 425, 174 S.W.2d 43, 46–47 (1943). To constitute a ratification a party must agree to all the material terms of the agreement. *Henderson v. Railroad Company,* 17 Tex. 560, 575–76 (1856). However, a royalty owner who has not executed a lease that has been pooled can ratify the lease and the pool by accepting royalty payments under the lease or by suing to enforce the lease's terms. *Montgomery.* 424 S.W.2d at 214–15.

■■■ The Hawkins-Baker lease, being void, did not grant Texas Oil and Gas any pooling authority, and Hawkins and Baker cannot rely on estoppel to create such authority where none previously existed. *See Southland Life Ins. Co.,* 217 S.W.2d at 663. Furthermore, not having acquired any interest under the void lease, Texas Oil and Gas did not pool any interest, either mineral or royalty, when it contributed the purported lease to the gas unit.

■■■ Hawkins and Baker admit that they refused to accept any royalty payments from the pool or to ratify the Bank-Alford lease in writing. Furthermore, they did not sue to enforce the Bank-Alford lease but, to the contrary, sought to recover under their own lease. Their second amended petition also does not contain any language purporting to ratify the lease. However, they attempted through affidavits to ratify one provision of the Bank-Al-

ford lease, the pooling provision, while repudiating the royalty provision and contesting the ownership of the mineral estate covered by the lease. Therefore, Hawkins and Baker cannot now claim the benefits of the Bank-Alford lease which they have consistently repudiated and refused to ratify in its entirety. Points seven through ten are overruled.

■■■ The court awarded TXO attorney's fees in connection with its interpleader action but ordered them paid out of the funds deposited in the court's registry. Hawkins and Baker complain in point eleven that the court erred when it awarded attorney's fees to TXO as an interpleader because it had abandoned its status as an "innocent stakeholder" and become an adverse party. Fairfield State Bank and the Alfords do not complain on appeal about the award.

A party cannot complain of errors which have not injured him or which merely affect the rights of others. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 92 (Tex.1973). Hawkins and Baker were not entitled to share in the suspended royalty payments deposited in the court's registry because, as owners of a royalty interest, they had not ratified the Bank-Alford lease or the gas unit. Therefore, point eleven is overruled because they have not been injured by the court's action.

The court also entered a joint and several judgment against Hawkins and Baker in favor of TXO and Fairfield State Bank for attorney's fees in connection with their declaratory-judgment actions. The court awarded TXO $4,000.00 and the Bank $7,000.00, with additional attorney's fees to be added at the different stages of the appellate process. Hawkins and Baker complain in their twelfth point about the court awarding any attorney's fees in connection with the counterclaims and cross-claims for declaratory relief. They contend that TXO's and the Bank's declaratory-judgment actions had been improperly brought as a matter of law because: (1) the entry of a declaratory judgment would not settle all of the issues and end the controversy between the parties; and (2) TXO and the Bank could not seek a declaratory

judgment by counterclaim or cross-claim after they had already asked for a construction of the deed through a declaratory judgment in their original petition. Both of these contentions must be rejected.

■■■■ A court has discretion whether to entertain a declaratory-judgment action. *K.M.S. Research Laboratories v. Willingham,* 629 S.W.2d 173, 174–75 (Tex.App.—Dallas 1982, no writ). It can refuse to enter a declaratory judgment if, in its discretion, the decree would not "terminate the uncertainty or controversy giving rise to the proceeding." Tex.Civ.Prac. & Rem. Code Ann. § 37.008 (Vernon 1986). However, it may enter a declaratory judgment although other issues in general controversy between the parties might remain unresolved. *Southern Nat., Etc. v. City of Austin,* 582 S.W.2d 229, 237 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

■■■ With the exception of ratification, questions relating to the validity of the Hawkins-Baker lease and the rights of the parties to share in the production from the gas unit under the Hawkins-Baker lease or the Bank-Alford lease depended upon the deed's interpretation. When the court correctly interpreted the deed, the issues which depended upon its interpretation were also decided. The court properly decided the ratification issue in connection with the summary judgment. Accordingly, the declaratory judgment put an end to the uncertainty or controversy between the parties because it determined the material issues which divided them. The court did not abuse its discretion as a matter of law when it entered the declaratory judgment.

Generally, a court should refuse to entertain a declaratory-judgment action if there is pending, at the time it is filed, *another action or proceeding* between the same parties and in which may be adjudicated the issues involved in the action for a declaratory judgment. *Texas Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex.1970). This rule has been applied when a completely separate proceeding, administrative or legal, was pending between the same parties in another cause or forum. *See e.g., Pickens v.*

*Hidalgo County Water Control & Imp. Dist.,* 284 S.W.2d 784, 786 (Tex.Civ.App.—San Antonio 1955, no writ); *Kenny v. Starnes,* 265 S.W.2d 639, 640 (Tex.Civ.App.—El Paso 1954, writ ref'd n.r.e.). Hawkins and Baker argue that TXO and the Bank could not seek a declaratory judgment by a counterclaim or cross-claim after they had already sought the same relief in their original petition. They essentially contend that their original petition constituted "another action or proceeding" between the parties.

■■■ The pleadings for declaratory judgment filed by TXO and Fairfield State Bank were not filed in "another action or proceeding" but were pleadings seeking declaratory relief in the same action or proceeding. To accept Hawkins' and Baker's argument would be tantamount to holding that only one party in a suit can receive attorney's fees in connection with a declaratory judgment and that is the party who first requests it. The Uniform Declaratory Judgments Act must be liberally construed and administered. *See* Tex.Civ.Prac. & Rem.Code Ann. § 37.002(b) (Vernon 1986). This court is not aware of any authority, and none has been cited, which would support such a limited interpretation of the statute. Point twelve is overruled.

Hawkins and Baker contend in point thirteen that the Bank was not entitled to recover attorney's fees referable to a declaratory judgment because the Bank, as a successor to the grantors, was estopped by the deed from attacking their ownership of a ¼th mineral interest. This argument must be rejected for the reason set forth in the disposition of points four and six. Because Hawkins and Baker did not acquire any right to the mineral estate through Scharff, estoppel by deed, which only protects existing rights, cannot be used to confer a greater estate on them than the deed conveyed to Scharff. *See Chace,* 32 S.W. at 522. Point thirteen is overruled.

■■■ In point fourteen, their final point, Hawkins and Baker argue that the evidence was legally insufficient to support an award of $7,000.00 to Fairfield State Bank as attorney's fees in connection with its

declaratory-judgment action. They insist that the evidence would not support an award in excess of $4,000.00 as a matter of law. Whether to grant or deny attorney's fees in a declaratory-judgment action is within the court's discretion. *Oak v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). The court did not abuse its discretion when it awarded $7,000.00 to the Bank as attorney's fees in connection with the declaratory-judgment action, which was an amount within the pleadings and proof as a matter of law. Point fourteen is overruled.

Having overruled all points of error, the summary judgment is affirmed.