

# NUMBER 13-12-00449-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

WYNNE/JACKSON DEVELOPMENT,
L.P. AND W/J LAKES, L.P.,                                          Appellants,

v.

PAC CAPITAL HOLDINGS, LTD. D/B/A
PAC GROUP, LTD., ET AL.,                                          Appellees.

---

### On appeal from the Probate Court
### of Denton County, Texas.

---

# MEMORANDUM OPINION ON REHEARING

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion on Rehearing by Chief Justice Valdez

We grant appellants' motion for rehearing, withdraw our opinion and judgment

dated February 7, 2013, and issue this opinion on rehearing.

Appellants, Wynne/Jackson Development, L.P. and W/J Lakes, L.P. (collectively,

"Wynne Jackson"), appeal a final summary judgment entered in favor of appellees, PAC

Capital Holdings, Ltd. d/b/a PAC Group, Ltd., Hillwood Oil & Gas Operating Company, L.P., Hillwood Energy Texas, L.P., Denton Independent School District ("DISD"), and the Owners' Association at Country Lakes, Inc. ("HOA"). We reverse and render in part and remand in part.

## I. BACKGROUND[1]

This is a dispute over the proper calculation of royalties to be paid on minerals being produced from wells in Denton County. The appeal centers on the proper construction of a clause in the three "Porter Deeds," which were executed in 1968. The Porter Deeds conveyed extensive tracts of land to third party purchasers, but reserved a non-participating royalty interest ("NPRI") in the mineral estate. That NPRI was described as "one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas, and other minerals produced, saved and sold from [such property]."

PAC Capital is the current owner of the NPRI and the successor in title to the grantor. The NPRI reservation is identical in each of the three Porter Deeds. PAC Capital's entitlement to receive royalty payments is not at issue; the parties dispute the proper calculation of payments due to PAC Capital under the NPRI.

Wynne Jackson, DISD, and the HOA own parcels of land subject to the NPRI claimed by PAC Capital. Therefore, the calculation of PAC Capital's NPRI payments will affect each of these parties.

Hillwood Oil & Gas Operating Company, L.P. and Hillwood Energy Texas, L.P. operate the wells at issue. Their leases were executed after the Porter Deeds and provide for royalty payments equal to one-fourth (1/4) of production.

---

[1] This case is before this Court on transfer from the Fort Worth Court of Appeals pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

The parties disagree as to the proper construction of the NPRI reservation. PAC Capital contends that the NPRI reserved what is commonly referred to as a "fraction of royalty." *See*, *e.g.*, *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied) ("A 'fraction of royalty' conveys a fractional share of the royalty that is contained in an oil and gas lease—it is not fixed, but rather 'floats' in accordance with the size of the landowner's royalty contained in the lease and, in addition to the landowner's royalty, the fraction of non-participating royalty also shares proportionally in any overriding royalty interest reserved in the oil and gas lease, and the holder of the executive right owes a duty to the NPRI owner in establishing the landowner's royalty in an oil and gas lease."). If so, this would entitle PAC Capital to receive an NPRI equal to one-half of whatever royalties are provided for in mineral leases that have been executed since 1968 when the Porter Deeds were executed. Wynne Jackson contends that the NPRI reserved what is commonly referred to as a "fractional royalty." *Id.* ("A 'fractional royalty' interest entitles the owner to the specified fractional amount stated in the deed of oil, gas, or other minerals produced from the land and remains constant regardless of the amount of royalty contained in a subsequently-negotiated oil and gas lease."). This would mean a fixed royalty equal to one-half of one-eighth of production, which equals 1/16 and remains fixed regardless of the language contained in any mineral lease executed after the Porter Deeds.

Thus, under the Hillwood leases, if PAC Capital is correct, it would receive a one-eighth royalty. If Wynne Jackson is correct, PAC Capital would receive a one-sixteenth royalty.

On May 27, 2012, PAC Capital filed suit, seeking a declaration that its NPRI interest under the Porter Deeds was a "fraction of royalty." Wynne Jackson filed an answer and counterclaim, seeking a declaration that the NPRI was a "fractional royalty" equal to one-sixteenth of production. PAC Capital and Wynne Jackson filed cross motions for partial summary judgment on the issue of the proper calculation of the NPRI. The trial court ruled in favor of PAC Capital. Pursuant to a rule 11 agreement and stipulation by the parties, the trial court subsequently entered a final judgment in favor of PAC Capital. *See* TEX. R. CIV. P. 11. This appeal ensued.[2]

## II. ANALYSIS

### A. Standard of Review

We review summary judgments de novo. *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.). In a traditional motion for summary judgment, the movant has the burden of showing both that there is no genuine issue of material fact and entitlement to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.). In deciding whether there is a genuine issue of material fact, evidence favorable to the nonmovant is taken as true, and all reasonable inferences are made, and all doubts are resolved, in favor of the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Summary judgment is proper if the movant disproves at least one element of each of

---

[2] Other issues in the case were resolved and are not before this Court. The Hillwood parties agreed to be bound by the trial court's determination regarding the NPRI and to continue the deposit of funds into the court's registry via a rule 11 agreement. *See* TEX. R. CIV. P. 11. An unopposed motion to dismiss the Hillwood parties from this appeal is pending before this Court and is hereby granted. Wynne Jackson and the HOA had filed cross claims against each other regarding who would bear the brunt of a PAC Capital victory (i.e., if PAC Capital's payments increase, whose will decrease?), but they filed a rule 11 agreement purporting to resolve their cross claims. *See id.* The parties entered into a stipulation as to PAC Capital's reasonable and necessary attorney's fees so as to avoid a trial solely on the issue of fees.

4

the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id.* The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Swilley*, 488 S.W.2d at 68.

When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 611 (Tex. 2012).

## B. Applicable Law

The construction of an unambiguous deed is a question of law for the court. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). In interpreting a deed, the primary duty of a court is to ascertain the intent of the parties by a fundamental rule of construction known as the "four corners" rule. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The interpretation of the contract is controlled by the parties' intentions as expressed within the four corners of the instrument. *Altman*, 712 S.W.2d at 118. In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of a deed. *Id.* Even if different parts of the deed appear contradictory or inconsistent, the court must strive to construe the instrument to give effect to all of its provisions. *Luckel*, 819 S.W.2d at 462.

A mineral estate consists of five interests: (1) the right to develop; (2) the right to lease; (3) the right to receive bonus payments; (4) the right to receive delay rentals; and

5

(5) the right to receive royalty payments. *French v. Chevron U.S.A.*, 896 S.W.2d 795, 797 (Tex. 1995). A mineral fee owner has a possessory estate in the land. *Pickens v. Hope*, 764 S.W.2d 256, 263 (Tex. App.—San Antonio 1988, writ denied). As such, he has the right to develop the minerals himself or the exclusive power to lease the land to another for mineral development. *Elick v. Champlin Petroleum Co.*, 697 S.W.2d 1, 3–4 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Campbell v. Dreier*, 382 S.W.2d 179, 183 (Tex. Civ. App.—San Antonio 1964, writ ref'd n.r.e.). In contrast, a non-participating royalty owner has no possessory estate in the land, and hence, no right to lease the land to another for mineral development or to produce the minerals himself. *Pickens*, 764 S.W.2d at 264. A "non-participating royalty" does not entitle the owner to produce the minerals himself, or permit him to join in a lease of the mineral estate to which the royalty is appurtenant, or entitle him to share in bonus or delay rentals that may be paid for the lease, but merely entitles him to a share of production under the lease free of exploration and production expenses. *Id.*

A "fractional royalty" is a fixed amount of the minerals that are produced. *See, e.g.*, *White v. White*, 830 S.W.2d 767, 770 (Tex. App.—Houston [1st Dist.] 1992, writ denied) ("[T]he grantor intended to convey three-eighths of all the oil and gas and other minerals 'produced and saved,' in other words, a fractional royalty, not a fraction of royalty."); *Helms v. Guthrie*, 573 S.W.2d 855, 857 (Tex. App.—Fort Worth 1978, writ ref'd n.r.e.) ("Our holding is that [grantor] contractually provided that he should own a 'fractional royalty' of 1/16th of the total production, not a 'fraction of royalty,' determinable upon the execution of some future lease."). A fractional royalty remains constant regardless of the amount of royalty provided for under any particular mineral

6

lease. *Range Res. Corp. v. Bradshaw*, 266 S.W.3d 490, 493 (Tex. App.—Fort Worth 2008, pet. denied) ("A 'fractional royalty' interest entitles the owner to the specified fractional amount stated in the deed of oil, gas, or other minerals produced from the land and remains constant regardless of the amount of royalty contained in a subsequently-negotiated oil and gas lease."); *Hawkins v. Tex. Oil & Gas Corp.*, 724 S.W.2d 878, 889 (Tex. App.—Waco 1987, writ ref'd n.r.e.) ("A conveyance of '1/2 of the 1/8th royalty interest' has been held to convey a 1/16th fractional royalty, entitling the royalty owner to one out of every sixteen parts of production regardless of the royalty retained in any lease.").

A "fraction of royalty" conveys a fractional share of the royalty that is contained in an oil and gas lease—it is not fixed, but rather "floats" in accordance with the size of the landowner's royalty contained in the lease and, in addition to the landowner's royalty, the fraction of non-participating royalty also shares proportionally in any overriding royalty interest reserved in the oil and gas lease, and the holder of the executive right owes a duty to the NPRI owner in establishing the landowner's royalty in an oil and gas lease. *Range Res. Corp.*, 266 S.W.3d at 493. The amount to be paid to the owner is determinable upon the execution of some future lease and is calculated by multiplying the fraction in the royalty reservation by the royalty provided in a lease. *Id.*

## C. Discussion

In this case, the relevant language in the Porter Deeds provides as follows:

There is excepted herefrom and reserved unto Grantor a non-participating royalty of one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas, and other materials produced, saved and sold from the above-described property, provided, however, that although said reserved royalty is non-participating and Grantee shall own and possess all leasing rights in and to all oil, gas and other minerals, Grantor shall, nevertheless, have

7

the right to receive one-half (1/2) of any bonus, overriding royalty interest, or other payments, similar or dissimilar, payable under the terms of any oil, gas and mineral lease covering the above-described property.

The foregoing language covers four of the five components of the mineral estate: (1) the right to lease, which is conveyed in its entirety; (2) the right to receive bonus payments, which is conveyed subject to a reservation; (3) the right to receive delay rentals, which is conveyed subject to a reservation; and (4) the right to receive royalty payments, which is conveyed subject to a reservation. At issue in this case is the proper construction of the reservation with respect to the right to receive royalty payments.

The relevant clause states, "There is excepted herefrom and reserved unto Grantor a non-participating royalty of one-half (1/2) of the usual one-eighth (1/8) royalty in and to all oil, gas, and other materials produced, saved and sold from the above-described property." In *Harriss v. Ritter*, the Texas Supreme Court was presented with a deed that included a nearly identical reservation of "one-half of one-eighth of the oil, gas and other mineral royalty." *Harriss v. Ritter*, 279 S.W.2d 845, 847 (Tex. 1955). In its decision, the Texas Supreme Court held, "[T]he reservation is susceptible of but one interpretation." *Id.* The court held, "as a matter of law that the term 'one-half of one-eighth of the oil, gas and other mineral royalty' could have but one meaning and that is 1/16th of the royalty on all the oil, gas and other minerals that may be produced from said land." *Id.* Again, this is consistent with the interest being a fractional royalty. Here, the only difference in the relevant language is that the words "the usual" are used to qualify the one-eighth royalty.

8

Similar language was interpreted by the San Antonio Court of Appeals in *Pickens*. *Pickens*, 764 S.W.2d at 258–59. In *Pickens*, the language provided for "an undivided 1/4 of the usual 1/8 royalty in all of the oil, gas or other minerals produced, saved and sold from the premises conveyed under the terms of any valid oil and gas lease." *Id.* The court held that the language reserved a "stated fraction" (i.e., 1/32) of the minerals produced as a royalty. *Id.* at 267. The court further held that, in the event of production, the grantor was entitled to "no more and no less" than the stated fraction—"and this irrespective of who manages the lease or upon what terms were contained in a lease." *Id.* Thus, the court treated the interest as a fractional royalty.

Based on the foregoing precedent, we conclude that the interest in this case is a fractional royalty, not a fraction of royalty. In so holding, we note that appellees have cited and relied upon the decision of the Fort Worth Court of Appeals in *Sundance Minerals*. *See Sundance Minerals, L.P. v. Moore*, 354 S.W.3d 507, 510 (Tex. App.—Fort Worth 2011, pet. denied). Unfortunately, the opinion in *Sundance Minerals* did not quote the operative language of the deed in its entirety; instead, the court summarized the language, thus making it impossible to compare it directly to the language at issue in this case. In its opinion, the Fort Worth Court of Appeals indicated that the deed included language that reserved "an undivided and non-participating one-half interest in the oil, gas, and other mineral rights." *See id.* The court noted that, if the language had not been qualified, it would have entitled the grantees to receive one-half of any royalty paid under a lease, as well as a one-half interest in any bonuses and rentals. *Id.* Interpreting the deed as a whole, the court concluded that the language was applicable only to the right to receive royalty payments. *Id.*

9

In this case, the language of the deeds does not purport to reserve an undivided interest in the entire mineral estate, as did the deed in *Sundance Minerals.* Moreover, unlike the deed in *Sundance Minerals*, the deeds in this case clearly reserve the rights of the grantor as they relate to bonus payments and delay rentals. Appellees argue that the reservations should be lumped together and construed as a single reservation; however, this would blur the distinction between the different components of the mineral estate when the deeds clearly sought to maintain that distinction.

In sum, we are guided by the precedent of the Texas Supreme Court in *Harriss* and the precedent of the San Antonio Court of Appeals in *Pickens* in concluding that the deeds in this case reserved what is known as a fractional royalty. We are mindful of the Fort Worth Court of Appeals' decision in *Sundance Minerals*; however, we believe this case is sufficiently distinguishable to preclude any conflict with that decision. Accordingly, we conclude that Wynne Jackson is entitled to judgment as a matter of law. The trial court's ruling to the contrary was error. Therefore, Wynne Jackson's issue is sustained.

### III. ATTORNEY'S FEES

In its motion for rehearing, Wynne Jackson requests that we remand the case to the trial court for resolution of its claim for attorney's fees under the Uniform Declaratory Judgment Act ("UDJA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.004(a) & 37.009 (West 2008). The Court requested a response from appellees. *See* TEX. R. APP. P. 49.2. PAC has filed a response, stating that although it opposes Wynne Jackson's motion for rehearing, it "agrees with the general proposition that a court of appeals may remand a decision in a declaratory judgment action solely on the issue of attorney's

10

fees under the UDJA." PAC also states that "it is the trial court that should decide whether Wynne Jackson is entitled to its attorney's fees." HOA has also filed a response. HOA states that it "has no opposition to [the] motion for rehearing whereby [Wynne Jackson] request[s] that the Court amend its Memorandum Opinion and Judgment to include a remand to the trial court on the issue of . . . attorney's fees under the Declaratory Judgment Act."

## A. Applicable Law

Section 37.009 of the Texas Civil Practice and Remedies Code provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The Texas Supreme Court has interpreted this language to mean that the decision to award attorney's fees is within the discretion of the trial court. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("[The UDJA] provides that the court 'may' award attorney fees. The statute thus affords the trial court a measure of discretion in deciding whether to award attorney fees or not."). "[W]hen we reverse a declaratory judgment, and the trial court awarded attorney's fees to the party who prevailed [in the] trial [court], we may remand the attorney's fee award for reconsideration in light of our disposition on appeal." *Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.).

## B. Discussion

Based on the foregoing, we conclude that it is appropriate to remand the attorney's fee award for reconsideration in light of our disposition on appeal. *See*

11

*Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod.*, 337 S.W.3d 310, 324 (Tex. App.—Corpus Christi 2011, pet. denied) ("Therefore, we will remand the issue of attorneys' fees for determination by the trial court.").

**IV. CONCLUSION**

The judgment of the trial court is reversed and a judgment is rendered in favor of Wynne Jackson. We reverse and remand the issue of attorney's fees to the trial court.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
6th day of June, 2013.